# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) Case No. 19-742-C<br>) Judge Lydia Kay Griggsby |
| Defendant, | ) |
| and | ) |
| BLUE ORIGIN, LLC, *et al.*, | ) |
| Defendant-Intervenors. | ) |

## PLAINTIFF'S OPPOSITION TO UNITED LAUNCH SERVICES, LLC IN-HOUSE COUNSEL'S APPLICATION FOR ACCESS TO INFORMATION UNDER PROTECTIVE ORDER

Pursuant to paragraph 5 of the Protective Order in this action and Appendix C to the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Space Exploration Technologies Corp. ("SpaceX") hereby timely objects to the application for admission to the Protective Order filed by Defendant-Intervenor United Launch Services, LLC ("ULS") on behalf of Ralph A. Bauer, in-house counsel for ULS and its parent corporation, United Launch Alliance, LLC ("ULA"). (ECF No. 55.) Counsel for SpaceX discussed this objection with counsel for ULS prior to filing.

There is no dispute that the matter before this Court involves "extremely sensitive and competitively significant materials and information concerning technical capabilities, state of development and other competitively sensitive information" that is directly relevant to an ongoing Air Force competition. (ECF No. 44 at 2.) The technical and pricing information covered by the Protective Order directly relates to future head-to-head competitions between SpaceX and ULS

involving other government agencies, including NASA. These two firms operate in an intensely competitive environment, on an ongoing basis, and the harm flowing from inadvertent disclosure would be material and significant. Because that harm eclipses any purported need of ULS to have Mr. Bauer access the information covered by the Court's Protective Order, SpaceX respectfully requests that the Court deny Mr. Bauer's application.

## ARGUMENT

In reviewing an objection to an application for access to protected information, this Court considers: (1) "the nature and sensitivity of the information at issue"; (2) "the party's needs for access to the information in order to effectively represent its position"; (3) "the overall number of applications received"; and (4) "any other concerns that may affect the risk of inadvertent disclosure." RCFC App'x C, ¶ 18(c). Each of these factors weighs decisively against admission of ULS' in-house counsel to the Protective Order.

**First**, there can be no dispute that the information at issue in this case is highly sensitive and competitively valuable. ULS confirmed the same when seeking heightened restrictions on the use of protected material in response to Protective Order applications of in-house counsel for Northrop Grumman:

> The Administrative Record will contain extremely sensitive and competitively significant materials and information concerning the technical capabilities, state of development, and other competitively-sensitive information about the launch vehicles of all parties to this proceeding, as well as the United States Air Force's evaluation of those capabilities. Yet, the Air Force filing of the Administrative Record will occur at the very same time that the parties are preparing proposals in the Phase 2 Competition, pursuant to a Request for Proposals, posted on May 3, 2019 (with proposals due August 1, 2019). Because the parties are anticipated to propose the launch vehicles at issue in this protest to perform services in the Phase 2 Competition, the improper use of competitively-sensitive information from this proceeding would provide a party an unfair and improper competitive advantage in the Phase 2 Competition.

2

(ECF No. 44 at 2.)  Beyond the ongoing procurement, the launch systems information will be relevant to launch services procurements for years to come.  And, it is not only the government market at stake, as ULS may seek to compete with SpaceX in the commercial space launch market.  The inadvertent release of the protected information in this case would cause irreparable competitive harm to SpaceX in a highly concentrated market where the technical capabilities and cost profiles of an offeror's launch system are often a significant differentiator.  Given these heightened sensitivities, the Court should limit protected information access to only those persons specifically necessary to conduct this litigation.

**Second**, ULS does not need its in-house counsel to access protected information in order to "effectively represent its position."  RCFC App'x C, ¶ 18(c).  ULS already has five experienced outside counsel admitted under the Protective Order.  (ECF Nos. 26-30.)  No basis exists to question these lawyers' abilities to represent ULS's interests in this matter, nor does Mr. Bauer's application identify specific qualifications necessary for ULS' defense of this protest.  To the extent ULS would prefer that in-house counsel have access to protected information to supervise or provide general guidance in this litigation, that too is unnecessary.  Experienced outside counsel are intimately familiar with the constraints of protective orders issued by this Court, and are more than capable of operating under those constraints and communicating sufficient non-protected information to enable their clients to make informed decisions.  *See, e.g.*, *McDonnell Douglas Corp.*, B-259694.2, B-259694.3, June 16, 1995, 95-2 CPD ¶ 51 ("[I]n-house counsel stated generally that he would manage MDC's outside counsel and otherwise 'contribute' in an unspecified manner during the protest.  This alone did not indicate that the in-house counsel's access to protected material was necessary for MDC to pursue its protest, given the admission of

MDC's outside counsel to the protective order.")  There is no need for in-house counsel to be admitted to the Protective Order at this juncture.[1]

**Third**, the overall number of Protective Order admissions issued in this case has already reached twenty-two lawyers, not including Mr. Bauer, five of whom represent ULS.  (ECF Nos. 19-23, 26-41, 52.)

**Fourth**, the "risk of inadvertent disclosure" significantly outweighs the (non-existent) need for ULS's in-house counsel to access protected information in this protest.  RCFC App'x C, ¶ 18(c); *see, e.g.*, *Fairholme Funds, Inc. v. United States*, 118 Fed. Cl. 795, 798 (2014) (denying expert access to protected information after explaining that "[b]inding precedent instructs that the court 'must balance the seriousness of potential injury [that] discovery poses against the need for information in the preparation of a plaintiff's case'") (quoting *Levine v. United States*, 226 Ct. Cl. 701, 701 (1981)); *Ross-Hime Designs, Inc. v United States*, 109 Fed. Cl. 725, 743 (2013) (denying corporate officer of competitor access to protective order after finding that potential harm of disclosure outweighed party's need for such disclosure).  As discussed above, there is no need for ULS's in-house counsel to access the highly sensitive agency source selection and offeror proprietary information at issue in this protest.  Yet, there is a material risk of inadvertent disclosure should such access be granted.

The risk of inadvertent disclosure from Mr. Bauer's admission to the Protective Order is apparent by the conflicting statements in his application.  (ECF No. 55.)  Specifically, despite

---

[1] Should a specific need arise later in this litigation for any party to consult with in-house counsel regarding information designated as protected, the party may, of course, seek the release of that specific information, pursuant to the terms of the Protective Order.  (ECF No. 16 ¶ 14  ("Waiving Protection Of information"); *id.* ¶ 17 ("Seeking Relief From The Protective Order").  Until such a specific need arises, however, and in light of the heightened sensitivities discussed herein, there is no need to preemptively provide in-house counsel access to *all* current and future protected information related to any issue and any party.

asserting that he is not involved in competitive decisionmaking (*id.* at 1), Mr. Bauer's supplemental statement shows that his duties have involved recent competitive decisionmaking, to include procurement-related matters (including perhaps the ongoing Phase 2 procurement):

> ULA has specifically tailored my responsibilities ***going forward*** to isolate me from competitive decision-making. ***On a going-forward basis,*** I will not attend proposal development meetings and will not review proposals or proposal-related materials, including any participation in activities related to the ongoing Phase 2 of the National Security Space Launch program competition . . . except as may be needed to carry out litigation-related responsibilities.

(ECF No. 55 at 5 (emphasis added).) It is not clear what litigation-related responsibilities would require Mr. Bauer to attend proposal development meetings. Mr. Bauer also reports directly to another competitive decisionmaker—Thomas P. Tshudy, General Counsel and Vice President of ULA. (*Id.*)

Moreover, when restating the competitive decisionmaking certification from the base application, Mr. Bauer's supplemental statement repeatedly changes the required certification. For example, rather than state "I am not involved in competitive decisionmaking," Mr. Bauer needs to qualify: "I am *not now and will not in the future* be involved…." (*Id.* at 4 (emphasis added).) Similarly, Mr. Bauer qualifies that his role in procurement-related matters "is *now and will be limited in the future* to providing legal counsel and support with regard to dispute." (*Id*. (emphasis added); *see also id.* at 4-5 ("I do not *now and will not in the futur*e provide advice or participate in decisions….") (emphasis added).) The Court has previously questioned certification alterations and should do so here. *See, e.g.*, *Zeidman Techs., Inc. v. United States*, 136 Fed. Cl. 50, 53 (2018) (finding application "particularly troubling" where certification conflicted with attachment, and party initially tried to modify form application).

Thus, unlike the applications submitted by the in-house counsel for Northrop Grumman Corporation, the parent corporation of Defendant-Intervenor Orbital Sciences Corporation (*see*

5

ECF Nos. 40-41), which revealed that they hold legal positions crafted from the outset to insulate them from competitive decisionmaking, Mr. Bauer's application demonstrates that ULS seeks now to change his duties in response to the protest, conditioning his abstinence from competitive decisionmaking "on a going forward basis."

Moreover, it is difficult to conceive how ULA could possibly tailor Mr. Bauer's future role in a way that shields him from work that will implicate the competitively valuable information he would learn from the record in this case. In-house counsel for Northrop Grumman Corporation can work on any number of matters across a wide range of industries and technologies that have nothing to do with the space launch industry. ULA, by contrast, was designed for one and only one industry—space launch. The protected launch system technical and cost information of ULA's competitors relates not only to the instant Air Force procurement, but also to virtually all public and commercial space launch acquisitions. Insulation from proposal preparation efforts alone is not nearly enough to shield an in-house lawyer from making competitively meaningful decisions. *Cf. Atl. Research Corp.*, B-247650, June 26, 1992, 92-1 CPD ¶ 543 (denying in-house counsel access to protected material given his broad internal role).

Even though Mr. Bauer may not intentionally violate his ethical obligations if admitted to the Protective Order, for the reasons explained above it would be difficult—if not impossible—for him to sufficiently "compartmentalize" protected information when fulfilling his current and future employment obligations at ULA, and its subsidiary ULS. *See, e.g.*, *McDonnell Douglas Corp.*, B-259694.2, B-259694.3, June 16 1995, 95-2 CPD ¶ 51 ("We determined that if the in-house counsel were given access to HMSC's proprietary information and the agency's source selection sensitive information, he would need to be continuously aware of, and to mentally compartmentalize, the potentially relevant information that would be nondisclosable to his MDC colleagues whenever

6

asked for his advice."); *Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 239 (2013) ("Even accepting that [the applicant] would make a conscious and sustained effort to comply with the terms of the protective order, the fallibility of the human brain is paramount. It is simply impossible for a human being to segregate, or 'unlearn,' certain pieces of knowledge. Furthermore, [the party] has not made a sufficient showing of need in connection with its request for access by [the applicant].")

## CONCLUSION

As discussed above, each of the factors identified in RCFC App'x C, ¶ 18(c) weighs against admission of ULS's in-house counsel to the Protective Order. Accordingly, SpaceX respectfully requests that the Court deny the application of Ralph A. Bauer.

Dated: June 26, 2019

*Of Counsel:*

Kara L. Daniels
David M. Hibey
Sonia Tabriz
Nathaniel E. Castellano
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001

Respectfully Submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Craig A. Holman
Craig A. Holman
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone: (202) 942-5720
Fax: (202) 942-5999

*Attorney of Record for Space Exploration Technologies Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2019, I caused a true and correct copy of the foregoing Opposition to be served by electronic delivery on:

Tanya B. Koenig
U.S. Department of Justice – Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Email: tanya.b.koenig@usdoj.gov
*Counsel for Defendant*

Scott E. Pickens
Barnes & Thornburg, LLP (DC)
1717 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC 20006-4623
Email: scott.pickens@btlaw.com
*Counsel for Defendant-Intervenor Blue Origin, LLC*

Todd R. Steggerda
McGuireWoods, LLP (DC)
2001 K Street, NW
Suite 400
Washington, DC 20006
Email: tsteggerda@mcguirewoods.com
*Counsel for Defendant-Intervenor United Launch Services, LLC*

Kevin Patrick Mullen
Morrison & Foerster, LLP (DC)
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Email: kmullen@mofo.com
*Counsel for Defendant-Intervenor Orbital Sciences Corporation*

/s/ Craig A. Holman