1  John D. Lombardo (Bar No. 187142)
   john.lombardo@arnoldporter.com
2  Arnold & Porter Kaye Scholer LLP
   777 South Figueroa Street, 44th Floor
3  Los Angeles, CA 90017-5844
   Telephone: 213.243.4000
4  Facsimile: 213.243.4199

5  Craig A. Holman (*admitted pro hac vice*)
   craig.holman@arnoldporter.com
6  Arnold & Porter Kaye Scholer LLP
   601 Massachusetts Ave., N.W.
7  Washington, D.C. 20001
   Telephone: 202.942.5000
8  Facsimile: 202.942.5999

9  Attorneys for Plaintiff
   *Space Exploration Technologies Corp.*
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                    **WESTERN DIVISION**

14 | Space Exploration Technologies Corp., | Case No. 2:19-cv-07927-ODW(GJS)

15 |                  Plaintiff, | Honorable Otis D. Wright II

16 |          v. | **NOTICE OF OBJECTION TO CONSULTANT APPLICATIONS FOR ADMISSION TO THE PROTECTIVE ORDER**

17 | United States of America,

18 |                  Defendant, | Ctrm:  5D, 5th Floor

19 |          v. |         First Street Courthouse
                            350 W. First Street
20 | Blue Origin, LLC, *et al.*, |         Los Angeles, CA 90012

21 |                  Defendant-Intervenors.

22

23                    **REDACTED VERSION**

24  ████████████████████████████████████████

25          ████████████████████████████

26

27

28

─────────────────────────────────────────────
████ NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS ████
        ██████████████████████████████████████

1    [Caption page continued]

2    Kara L. Daniels (*admitted pro hac vice*)
     kara.daniels@arnoldporter.com

3    David M. Hibey (*admitted pro hac vice*)
     david.hibey@arnoldporter.com

4    Sonia Tabriz (*admitted pro hac vice*)
     sonia.tabriz@arnoldporter.com

5    Nathaniel Castellano (*admitted pro hac vice*)
     nathaniel.castellano@arnoldporter.com

6    Eric A. Valle (*admitted pro hac vice*)
     eric.valle@arnoldporter.com

7    Arnold & Porter Kaye Scholer LLP
     601 Massachusetts Avenue, N.W.

8    Washington, D.C. 20001
     Telephone:  (202) 942-5000

9    Facsimile:   (202) 942-5999

10    Attorneys for Plaintiff
     *Space Exploration Technologies Corp.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to Paragraph 5 of the Protective Order in this action (ECF 16, 162), Plaintiff Space Exploration Technologies Corp. ("SpaceX") hereby timely objects to the application for admission to the Protective Order filed by Defendant-Intervenor Orbital Sciences Corporation ("Orbital") on behalf of expert government contract cost accounting consultants James Check, Kevin Mosteller, and Marc Schwartz of Chess Consulting LLC.  (ECF 169.)  Counsel for SpaceX discussed this objection with counsel for Orbital prior to filing and requested additional information.  Orbital counsel has indicated that it has requested (but not yet received) additional information from the proffered consultants.  Given that the Protective Order requires objections within two days of the application submission, SpaceX timely files this objection to avoid waiver.  SpaceX will continue its efforts to resolve this matter amicably with Orbital counsel and will withdraw this objection if a resolution is reached.

The matter before this Court involves "extremely sensitive and competitively significant materials and information concerning technical capabilities, state of development and other competitively sensitive information" that directly relates to an ongoing Air Force Space and Missile Systems Center ("Air Force") competition for launch services.  (ECF 44 at 2.)  The technical and pricing information covered by the Protective Order also directly relates to future head-to-head competitions between SpaceX and Orbital, as well as the other Defendant-Intervenors and other aerospace companies, involving other government agencies, including NASA, and the commercial sector.  These firms operate in an intensely competitive environment for public and private launch services, on an ongoing basis, and the harm flowing from inadvertent disclosure would be material and significant.  Because that harm exceeds any purported need of Orbital to bring three cost accounting consultants—who regularly advise SpaceX competitors and space launch industry suppliers—under the Protective Order, SpaceX respectfully requests that the Court deny the applications.  To the extent any of

1  the applications are granted, SpaceX asks that the Court make the consultants'
2  admission to the Protective Order contingent on additional restrictions on the
3  consultants' future activities in the space launch industry.

4  **ARGUMENT**

5       At the parties' stipulation, this Court adopted the United States Court of Federal
6  Claims Protective Order previously issued to govern this matter (the "Protective
7  Order").   (ECF 162.)   Protective Order paragraphs 4 through 6 in particular,
8  incorporate Appendix C of the Rules of the United States Court of Federal Claims
9  ("RCFC") and address applications to the Protective Order and objections thereto.
10  (ECF 16 ¶¶ 4-6.)  As noted in Orbital's motion, pursuant to the Protective Order, any
11  objection to an application must be filed within two business days.  (ECF 169 at 2.)
12  And, where, as here, a party timely files an objection to an application, access to
13  protected material is only granted by court order.  (*Id.* ¶ 6.)

14       RCFC Appendix C Section IV, incorporated by the Protective Order with
15  respect to applications, provides that the grant or denial of an application in a
16  proceeding such as this requires consideration of: (1) "the nature and sensitivity of
17  the information at issue"; (2) "the party's needs for access to the information in order
18  to effectively represent its position"; (3) "the overall number of applications
19  received"; and (4) "any other concerns that may affect the risk of inadvertent
20  disclosure."  RCFC App'x C, ¶ 18(c).  These factors comport with the standards
21  applied in the United States Court of Appeals for the Ninth Circuit to similar inquiries:
22  "Where trade secrets or other confidential commercial information is involved, the
23  court will balance the risk of disclosure to competitors against the risk that a protective
24  order will impair prosecution or defense of the claims."  *Nutratech, Inc. v. Syntech*
25  *(SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Brown Bag Software*
26  *v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).   Regardless of the
27  formulation, these tests weigh decisively against admission of Orbital's accounting
28  consultants to the Protective Order.

- 2 -

**First,** the information at issue in this case is highly sensitive and competitively valuable.  As justification for entering the Protective Order in the first instance, the Court of Federal Claims found that "certain information likely to be disclosed orally, or in writing, during the course of this litigation may be competition-sensitive or otherwise protectable and that entry of a protective order is necessary to safeguard the confidentiality of that information."  (ECF No. 16 at 1.)  Moreover, Defendant-Intervenor United Launch Services ("ULS") emphasized the competition-sensitive nature of the record materials in this case when it sought heightened restrictions on the use of protected material in response to Protective Order applications of in-house counsel for Northrop Grumman (Orbital's parent):

> The Administrative Record will contain extremely sensitive and competitively significant materials and information concerning the technical capabilities, state of development, and other competitively-sensitive information about the launch vehicles of all parties to this proceeding, as well as the United States Air Force's evaluation of those capabilities.  Yet, the Air Force filing of the Administrative Record will occur at the very same time that the parties are preparing proposals in the Phase 2 Competition, pursuant to a Request for Proposals, posted on May 3, 2019 (with proposals due August 1, 2019).  Because the parties are anticipated to propose the launch vehicles at issue in this protest to perform services in the Phase 2 Competition, the improper use of competitively-sensitive information from this proceeding would provide a party an unfair and improper competitive advantage in the Phase 2 Competition.

(ECF No. 44 at 2.)

Although the parties already have submitted their initial proposals for the Phase 2 competition, the competitive value of the record information has not diminished. The Air Force may yet invite the offerors to engage in discussions and revise their proposals, particularly in an attempt to negotiate more favorable pricing.  And, Defendant-Intervenor Blue Origin, LLC ("Blue Origin") has been openly campaigning (and litigating) to have the Phase 2 competition reopened and delayed until after it has more time to advance its technology.[1]  Blue Origin's efforts alone

---

[1] Blue Origin has been lobbying for the Air Force to delay the Phase 2 competition so that its rockets may reach the required technical maturity.  *See e.g.*, Sandra Erwin, *Blue Origin Urging Air Force*

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS

1  create a real potential that the Phase 2 competition (in whole or in part) may be

2  restarted, requiring the competitors to submit new proposals that would obviously be

3  impacted by any unintended release of the valuable and proprietary information

4  covered by the Protective Order in this case.

5      Beyond the ongoing procurement, the launch system information covered by

6  the Protective Order will be relevant to launch services procurements for years to

7  come.  And, it is not only the U.S. government market at stake, as Orbital and other

8  Defendant-Intervenors may seek to compete with SpaceX in the commercial space

9  launch market.  The inadvertent release of the protected information in this case would

10  cause serious competitive harm to SpaceX in a highly concentrated market where the

11  technical capabilities and cost profiles of an offeror's launch system are often a

12  significant differentiator.

13      Given these heightened sensitivities, the Court should limit protected

14  information access to only those persons _needed_ to conduct this litigation.

15  Particularly because, as explained below, there is no need for expert testimony from

16  cost accountants to conduct judicial review of the Air Force award decision on the

17  record in this case, this Court should not permit Orbital to inject a team of cost

18  accountants – particularly the three individuals at issue who, as discussed below, are

19  engaged by SpaceX competitors – through the Protective Order with unfettered access

20  to the parties' most confidential and competition-sensitive pricing and technical

21  proposal data.

22      **Second,** Orbital does not need its three proposed accounting experts under the

23  Protective Order to "effectively represent its position."  RCFC App'x C, ¶ 18(c).

24  SpaceX challenges the Air Force's award decision under the Administrative

26  _to Postpose Launch Competition_, Space News (Apr. 8, 2019), https://spacenews.com/blue-origin-
27  urging-air-force-to-postpone-launch-competition/. Blue Origin successfully challenged the Phase 2
solicitation at the Government Accountability Office, opening the possibility that the Air Force may
28  need to reopen the competition. _See Blue Origin Florida, LLC_, B-4178339, Nov. 18, 2019, 2019
WL 6250708, https://www.gao.gov/products/B-417839.

- 4 -

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS

1  Procedure Act ("APA"), and the Air Force's decision must stand or fall on the bases
2  provided by the Air Force in the administrative record.  A court "can only uphold
3  [agency] action 'on the basis articulated by the agency itself.'"  *Safe Air For Everyone*
4  *v. U.S. E.P.A.*, 488 F.3d 1088, 1101 (9th Cir. 2007) (quoting  *Motor Vehicle Mfrs.*
5  *Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)); *see*
6  *e.g.*, *I.C.C. v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (holding
7  court may not affirm based on discretionary decision agency did not make "since that
8  would remove the discretionary judgment from the agency to the court"); *SEC v.*
9  *Chenery Corp.*, 318 U.S. 80, 88 (1943); *Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640,
10 646 (D.C. Cir. 1998) ("An agency action, however permissible as an exercise of
11 discretion, cannot be sustained where it is based not on the agency's own judgment
12 but on an erroneous view of the law.").
13       The only role of Orbital and the other Defendant-Intervenors in this case is to
14 attempt to support the Air Force decision based on the reasons actually articulated by
15 the Air Force and on the administrative record.  Suffice it to say the administrative
16 record in this case does not include any analysis from the consulting-applicants.
17 Although SpaceX does challenge the Air Force's evaluation of the respective
18 Government Investment in each proposed solution, judicial review of that challenge
19 does not require the expert opinion of accounting consultants.  SpaceX has not alleged
20 complex cost accounting issues in the subject action and has not attacked Orbital's
21 cost proposal at all.  SpaceX offered no expert testimony to support its argument, as
22 the errors of the Air Force's price evaluation are evident on the face of the record.
23 And, Orbital has a team of eight lawyers who have been admitted under the Protective
24 Order.  Put simply, there is no litigation need for the outside consultants seeking
25 admission under the Protective Order.
26       **Third,** the "risk of inadvertent disclosure" posed by these consulting-applicants
27 outweighs the (non-existent) need for Orbital's experts to access protected
28 information.  RCFC App'x C, ¶ 18(c); *see, e.g., Nutratech*, 242 F.R.D. at 555-56

- 5 -

1    (denying protective order application after finding risk of disclosure outweighs need

2    for applicant's access); *Fairholme Funds, Inc. v. United States*, 118 Fed. Cl. 795, 798

3    (2014) (denying expert access to protected information after explaining that

4    "[b]inding precedent instructs that the court 'must balance the seriousness of potential

5    injury [that] discovery poses against the need for information in the preparation of a

6    plaintiff's case'") (quoting *Levine v. United States*, 226 Ct. Cl. 701, 701 (1981)); *Ross-*

7    *Hime Designs, Inc. v United States*, 109 Fed. Cl. 725, 742-43 (2013) (denying access

8    to protective order after finding that potential harm of disclosure outweighed party's

9    need for such disclosure).  As discussed above, there is no need for Orbital's experts

10    to access the highly sensitive agency source selection and offeror proprietary

11    information covered by the Protective Order.  Yet, there is a material risk of

12    inadvertent disclosure should such access be granted, as made apparent by the

13    applications themselves.

14       The proffered experts report that in the last two years alone they have worked

15    with a host of prominent companies active in the aerospace industry, including most

16    notably by providing "litigation support" to Northrop Grumman Corporation (now

17    owner of Orbital) and "government contract cost/price consulting" services to Aerojet

18    Rocketdyne (a key engine manufacturer in the industry supply chain), Peraton Inc.,

19    and Sierra Nevada Corporation.  (ECF 169 at 8-9, 27.)  In short, Orbital's cost experts

20    regularly market their "cost/price consulting" services to the same companies with

21    which SpaceX competes in the space launch industry market.

22       The risk of inadvertent disclosure of protected information within the space

23    launch industry is heightened because the applications provide only narrow limits on

24    future activities that the experts can engage in after admission to the Protective Order.

25    Specifically, the applications certify that "for a period of <u>two years</u> after the date" the

26    applications are granted the consultants will not "engage or assist in the <u>preparation</u>

27    <u>of a proposal</u> to be submitted <u>to any agency of the United States government</u> for <u>space</u>

28    <u>launch systems</u> when [they] know or have reason to know that a party to this

- 6 -

1   proceeding, or any successor entity, will be a competitor, subcontractor, or teaming

2   member." (ECF 169 at 5, 16, 23.) The applications certify that, "for a period of <u>two</u>

3   <u>years</u>" after the applications are granted, the consultants "will not engage or assist in

4   the preparation of a proposal or submission to <u>Expendable Launch Vehicle Program</u>

5   nor will [they] have personal involvement in any such activity." (*Id.*)

6        These limitations crafted by the experts (or Orbital counsel) do not suffice

7   given the consultants typical "cost/price consulting" work and value of protected

8   information at issue in this case, highly-sensitive information about developmental

9   and innovative technologies that implicate the civil, national security, and commercial

10   space market. Their promised restrictions last only two years, to expire in roughly

11   December 2021. The solicitation for the competition at issue in this action itself

12   evaluated the offerors' abilities to satisfy launches scheduled for 2022, 2023, 2024,

13   2025, and 2026. (Tab 38 at 1288.) The Phase 2 competition seeks to establish

14   ordering periods from Fiscal Year 2020 through 2024 for missions through 2027.

15   (ECF 168-1 at 3.) Moreover, Blue Origin is actively lobbying the DoD and Congress

16   to carve the later launches out of the scope of the Phase 2 competition so that DoD

17   can compete the launches at a later date, at which point any restrictions against the

18   participation of the consultants in this case may already have expired.

19        Beyond duration, the scope of restricted activities is conspicuously narrow as

20   well. The restrictions only address proposal preparation activities, but the consultants'

21   resumes reveal that they regularly work with space industry participants in a whole

22   host of other cost accounting roles. Moreover, even the proposal preparation activity

23   limitation, as written, is far too narrow, because the information under this Protective

24   Order (at least as related to SpaceX) is competitively valuable for all competitions

25   across the commercial and government space launch industry.

26        Even assuming, when engaging in activities beyond the scope of those

27   expressly identified in the applications, the experts do not intend to violate their

28   obligation to maintain the confidentiality of the protected material at issue in this

- 7 -

litigation, it would be difficult—if not impossible—for them to sufficiently "compartmentalize" protected information when fulfilling their current and future employment obligations to other clients in the space launch industry, including SpaceX's direct competitors such as Northrop and Aerojet Rocketdyne. This fundamental concern alone is regularly invoked to deny applications to protected material. *See e.g.*, *Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 239 (2013) ("Even accepting that [the applicant] would make a conscious and sustained effort to comply with the terms of the protective order, the fallibility of the human brain is paramount. It is simply impossible for a human being to segregate, or 'unlearn,' certain pieces of knowledge. Furthermore, [the party] has not made a sufficient showing of need in connection with its request for access by [the applicant]."); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 21-22 (D. Del. 1988) (denying access to protective order in patent litigation based on doubts that applicant could compartmentalize information learned under the protective order from other aspects of job responsibilities). *Cf. Brown Bag*, 960 F.2d at 1471 (inquiring whether applicant for admission to protective order "could lock-up trade secrets in his mind").

## CONCLUSION AND RELIEF REQUETED

As discussed above, each of the factors identified in RCFC App'x C, ¶ 18(c) weighs against admission of Orbital's experts to the Protective Order. More generally, the risk of inadvertent disclosure far outweighs the nonexistent need for the consultants' admission. Accordingly, SpaceX respectfully requests that the Court deny the applications. To the extent that the Court does not reject the applications outright, SpaceX requests that the Court make the admission contingent on filing amended certifications that, for a period of five years after the date of admission, none of the applicants will perform any work for any company that participates in the commercial or government space launch industry.

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS

1
2  Dated:  December 12, 2019          ARNOLD & PORTER KAYE SCHOLER LLP

3                                     By:  */s/  Craig A. Holman*
                                          Craig A. Holman (*admitted pro hac vice*)
4
                                     Attorneys for Plaintiff
5                                    *Space Exploration Technologies Corp.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS

**PROOF OF SERVICE**

1

2      I hereby certify that on this 12th day of December 2019, I caused a true and

3  correct copy of the foregoing Sealed Notice of Objection to Protective Order

4  Applications to be served by email on:

5

6                              Joseph Evan Borson
                              U.S. Department of Justice
7                    Federal Programs Branch - Civil Division
                              1100 L Street, N.W.
8                            Washington, D.C. 20005
                              Tel:  202-514-1944
9                             Fax:  202-616-8460
                         Email: joseph.borson@usdoj.gov
10                      *Counsel for United States of America*

11                              Scott E. Pickens
                         Barnes and Thornburg LLP
12            1717 Pennsylvania Avenue, N.W., Suite 500
                         Washington, D.C. 20006-1313
13                            Tel:  202-371-6349
                              Fax:  202-289-1330
14                     Email: Scott.Pickens@btlaw.com
                         *Counsel for Blue Origin, LLC*
15

16                             Todd R. Steggerda
                              McGuireWoods LLP
17                    2001 K Street, N.W., Suite 400
                         Washington, D.C. 20006
18                            Tel:  202-857-2477
                              Fax:  202-828-2968
19                  Email: tsteggerda@mcguirewoods.com
                    *Counsel for United Launch Services, LLC*
20

21

22

23

24

25

26

27

28

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS

1

Kevin P. Mullen
Morrison and Foerster LLP
2000 Pennsylvania Avenue, N.W., Suite 6000
Washington, D.C. 20006
Tel: 202-887-1500
Fax: 202-887-0763
Email: KMullen@mofo.com
*Counsel for Orbital Sciences Corporation*

2

3

4

5

6    Dated:  December 12, 2019            ARNOLD & PORTER KAYE SCHOLER LLP

7

8                                                    By:  */s/  Craig A. Holman*
                                                              Craig A. Holman (*admitted pro hac vice*)

9
                                                         Counsel for Plaintiff
10                                                    *Space Exploration Technologies Corp.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF OBJECTION TO PROTECTIVE ORDER APPLICATIONS