# EXHIBIT A

1  John D. Lombardo (Bar No. 187142)
   john.lombardo@arnoldporter.com
2  Arnold & Porter Kaye Scholer LLP
   777 South Figueroa Street, 44th Floor
3  Los Angeles, CA 90017-5844
   Telephone: 213.243.4000
4  Facsimile: 213.243.4199

5  Craig A. Holman (*admitted pro hac vice*)
   craig.holman@arnoldporter.com
6  Arnold & Porter Kaye Scholer LLP
   601 Massachusetts Ave., N.W.
7  Washington, D.C. 20001
   Telephone: 202.942.5000
8  Facsimile: 202.942.5999

9  Attorneys for Plaintiff
   Space Exploration Technologies Corp.
10
   [Additional counsel listed on following page]
11

12               **UNITED STATES DISTRICT COURT**

13               **CENTRAL DISTRICT OF CALIFORNIA**

14                     **WESTERN DIVISION**

15  Space Exploration Technologies Corp.,        Case No. 2:19-cv-7927-ODW(GJS)
                                                  Honorable Otis D. Wright II
16                     Plaintiff,

17         v.                                     **DECLARATION OF** ███████
                                                  ████████ **IN SUPPORT OF**
18  United States of America,                     **PLAINTIFF'S MOTION FOR**
                                                  **JUDGMENT ON THE CERTIFIED**
19                     Defendant,                 **ADMINISTRATIVE RECORD**

20         v.

21  Blue Origin, LLC, *et al.*,                   Ctrm:  5D, 5th Floor
                                                  First Street Courthouse
22                     Defendant-Intervenors.     350 W. First Street
                                                  Los Angeles, CA 90012
23

24                    **REDACTED VERSION**

25  ███████████████████████████████████████████████
26  ███████████████████████████████████████
27
28

DECLARATION OF ███████ ██████████████████████████████

EXHIBIT A

37

1    [Caption page continued]

2    Kara L. Daniels (*admitted pro hac vice*)
     kara.daniels@arnoldporter.com
3    David M. Hibey (*admitted pro hac vice*)
     david.hibey@arnoldporter.com
4    Sonia Tabriz (*admitted pro hac vice*)
     sonia.tabriz@arnoldporter.com
5    Nathaniel Castellano (*admitted pro hac vice*)
     nathaniel.castellano@arnoldporter.com
6    Eric A. Valle (*admitted pro hac vice*)
     eric.valle@arnoldporter.com
7    Arnold & Porter Kaye Scholer LLP
     601 Massachusetts Avenue, N.W.
8    Washington, D.C. 20001
     Telephone: (202) 942-5000
9    Facsimile:  (202) 942-5999

10   Attorneys for Plaintiff
     Space Exploration Technologies Corp.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ████████████████████████

                 █████████████████████████████      EXHIBIT A
                                                     38

**DECLARATION OF** ███████████

I, ████████, declare as follows:

1.    My name is █████████. I am over 21 years of age. I am ███████ ███████████████████ at Space Exploration Technologies Corp. ("SpaceX"). My office address is 1 Rocket Rd, Hawthorne, CA, 90250. I am of sound mind and am capable of making this Declaration. The information contained herein is based on my own personal knowledge, my review of SpaceX business records, and the debriefing information (including, e.g., the redacted Award Decision, redacted Portfolio Recommendation, and SpaceX's final evaluation documents). If called as a witness in a trial or proceeding, I could and would competently testify to all the facts stated herein.

2.    In my role as █████████████████████████, I am responsible for ensuring the successful execution of all commercial, civil, and national security space missions, and their associated contractual requirements. Part of these requirements deal with executing the certification process for the U.S. Air Force, NASA and the National Reconnaissance Office. The role also includes responsibility for training and operations of the SpaceX Dragon Spacecraft. I am also █████████ ████████████████████████████████████████████ ███████████████████████.

3.    I offer this Declaration in connection with this Court's adjudication of SpaceX's pending Motion for Judgment on the Certified Administrative Record seeking relief from the Air Force Space and Missile Systems Center ("Air Force") decision to award Launch Service Agreements ("LSA") to United Launch Alliance ("ULA"), Orbital Sciences Corp. ("Orbital") and Blue Origin, LLC ("Blue Origin"), but not to SpaceX under the LSA Request for Proposals, Solicitation No. FA8811-17-9-0001 ("RFP").

4.    Because this Declaration is offered for the limited purpose of explaining the prejudice and irreparable harm to SpaceX caused by the challenged agency conduct, it does not include all of the information I know about the matters referenced herein.

## A.   SpaceX And Its Key Accomplishments

5.   Elon Musk founded SpaceX in 2002 to dramatically reduce the cost of access to space through the design, manufacture and launch of advanced rockets and spacecraft.

6.   In less than twenty years, SpaceX has achieved numerous historic milestones.  In September 2008, SpaceX's Falcon 1 became the first privately developed liquid fuel rocket to reach Earth orbit.  In July 2009, the Falcon 1 again made history as the first privately developed liquid fuel rocket to deliver a commercial satellite to Earth orbit.

7.   SpaceX's Dragon became the first privately developed spacecraft in history to re-enter the atmosphere from low Earth orbit in December 2010 and to visit the Space Station in May 2012.

8.   The Falcon 9—the first currently operational launch vehicle proposed by SpaceX under the LSA RFP—entered service in 2010 and has achieved a series of historic milestones since then, including achieving the first-ever orbital class rocket landing when its first stage returned to a soft landing after delivering payloads to orbit. This  market changing achievement gives SpaceX the unique ability to reuse key launch vehicle components and thus reduce the lead time and expense associated with launch.

9.   After obtaining certification in May 2015 for Falcon 9 to perform national security space ("NSS") missions, SpaceX introduced competition into the United States Evolved Expendable Launch Vehicle ("EELV") program, now renamed the National Security Space Launch program.  Prior to this time, the EELV program depended on sole source contracts to legacy provider, ULA.

10.   The Falcon Heavy—the second currently operational launch vehicle proposed by SpaceX under the LSA RFP—entered service in February 2018.  As the most powerful launch vehicle in operation, with more than 5.1 million pounds of thrust at liftoff, the Falcon Heavy builds on the proven, highly reliable design of

- 2 -

Falcon 9 and ███████████████████████████.  The second Falcon Heavy launch occurred on April 11, 2019 and all three booster rockets successfully returned to earth for later reuse.  The two outer cores successfully landed on dual concrete landing pads at Cape Canaveral, while the center core landed on the drone ship in the Atlantic.  The third Falcon Heavy launch successfully occurred on June 25, 2019.  The Air Force has certified the Falcon Heavy to fly EELV missions.

11.    To date, SpaceX has successfully launched its Falcon 9 and Falcon Heavy launch vehicles more than 70 times in support of national security, civil space and commercial space customers, including recent missions for the Air Force and the National Reconnaissance Office.  In December 2018, SpaceX successfully launched the first of the next generation Global Positioning System ("GPS") III satellites to orbit, helping the Department of Defense start a new era for the critically important GPS constellation and mission.

12.    Building upon the achievements of the Falcon 9 and Falcon Heavy, SpaceX is currently working on Starship, its next generation, ███████████ launch vehicle that will be the most powerful rocket ever built. SpaceX proposed Starship as the third launch vehicle for the LSA; only the Category C NSS missions require the super heavy-lift capabilities of the Starship.

13.    In parallel with its commitment to national security missions, SpaceX has become the global leader in commercial satellite launch services, despite fierce competition from heavily subsidized competitors from Europe, Russia, China, and India.

14.    SpaceX has conducted more launches than any other commercial provider over the past two years, with a record of 21 launches in 2018 alone.  Indeed, fewer than half of SpaceX's launches to date have been executed for United States Government customers, demonstrating the commercial market's steady demand for SpaceX launch services.

- 3 -

DECLARATION OF ██████████
████████████████████

15.   Prior to the Falcon 9's entrance into the commercial launch market, the United States held *zero percent* of the market share.  Today, SpaceX itself holds roughly *65 percent* of the global commercial launch market.

16.   SpaceX has secured over 100 missions to its manifest including commercial satellite launches as well as national security space and civil space missions for the United States Government.

17.   SpaceX's ability to compete successfully for commercial launches around the globe means that SpaceX does not depend solely on any one market segment to remain viable.  In periods of low demand for NSS launch services for the United States Government, SpaceX maintains sufficient business in the commercial and civil space markets to continue its operations without Government support.  This eliminates the burden to the Government of carrying the full fixed costs of SpaceX's business to maintain assured access to space.

18.   SpaceX's operating model stands in stark contrast to companies like legacy provider ULA, which requires the United States Government to pay its operational costs.

19.   Also unlike ULA, which has long relied on Russian-designed and -made engines to power its launch vehicles, SpaceX's developed its own, American-made rocket engines to power its family of launch vehicles.

**B.    Air Force Plan To End Reliance On Russian Engines, To Create Sustainable Competition And Maintain Assured Access to Space**

20.   In late 2014, Congress directed the Air Force to end its reliance on Russian-powered launches for NSS missions.

21.   In response, the Air Force announced a four-phased approach for its next procurement of EELV launch services.  The LSA is the third step in that process, which the LSA RFP itself describes as "a strategy to quickly transition from the use of non-allied space launch engines, implement sustainable competition for National Security Space (NSS) launch services, and maintain assured access to space."

- 4 -

22.    The fourth and final step of the process is a Federal Acquisition Regulation Part 12-based procurement seeking two launch providers for NSS missions, the so-called Phase 2 Competition.  SpaceX is currently competing in the Phase 2 Competition against each of the LSA awardees.

### C.    LSA Competition And SpaceX Proposal

23.    The LSA RFP advised all offerors that the "focus of the solicitation is to leverage industry's commercial launch solutions and ensure they are modified to meet NSS requirements."

24.    The LSA RFP also advised that the "public private agreements," i.e., the LSAs, "will be tailored to each launch service provider's needs in order to enable commercial launch systems to meet all NSS requirements."

25.    SpaceX took the RFP objectives and requirements seriously and at face value, proposing a viable commercial launch system that met or exceeded all RFP requirements for fulfilling the NSS mission.  For all Category A/B missions, SpaceX's LSA proposal offers the Falcon 9—the dominant commercial launch vehicle on the global market—as well as the Falcon Heavy—an operational vehicle with a strong mix of commercial and Government customers.  For the limited Category C missions, SpaceX offered its Starship—a groundbreaking design leveraging technologies developed for both the Falcon fleet as well as the Dragon spacecraft—to provide the lowest mission cost of any Category C capable launch vehicle.  Starship offers the Air Force ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████.

26.    It was SpaceX's reasonable expectation from the Agency's RFP pronouncements that SMC would apply the evaluation criteria and invest in partnerships to adapt the most advantageous commercial launch system to fulfill NSS requirements.

- 5 -

DECLARATION OF ████████████████████████████████████████
████████████████████████████████████████

### D.   The Errors In The Evaluation Prejudice SpaceX

27.   SpaceX was the only offeror in the LSA competition not to receive an LSA award.

28.   The debriefing materials provided to SpaceX showed that the Air Force based its decision not to award SpaceX an LSA on material and demonstrable deviations from the RFP's stated objectives and evaluation criteria, and other evaluation mistakes that improperly favored the awardees and/or disfavored SpaceX.

29.   <u>Disproportionately Weighted Category C.</u>  Only two Category C payload orbits are referenced in the LSA RFP, and the launch capability need dates for those respective orbits were September 1, 2025 (tentative) and October 1, 2026 (firm), many years after the April 1, 2022 need date for Category A/B missions that the Falcon 9 and Falcon Heavy would service.

30.   Based on the debriefing materials and my pre-award, independent knowledge of our competitors, SpaceX was the only LSA offeror that proposed actual operational launch vehicles, with real and repeated launch successes, and a true commercial business model underpinning those successes.   Nevertheless, the evaluation nullified each of SpaceX's unique strengths, strengths that go to the heart of the "assured access to space" award criterion based on perceived risks with the Starship, which is the only developmental aspect of SpaceX's proposed approach and which would be required solely for the few Category C missions set to take place starting in September 2025 at the earliest.

31.   In other words, the Air Force determined that SpaceX's existing, proven, and certified launch vehicles—in combination with a newly proposed launch vehicle to handle a distinct category of limited missions not set to fly for many years—pose more risk to the assured access to space than the entirely conceptual rocket solutions the Air Force actually selected for LSAs, which the awardees must have ready by the operational need date of April 1, 2022 for the Air Force's nearest and most imminent requirements.

- 6 -

DECLARATION OF ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

32.    When assessing risk for SpaceX, SMC focused exclusively on SpaceX's proposed solution for Category C payloads, giving no weight to the Low risk Category A/B solutions proposed by SpaceX, i.e., the Falcon 9 and Falcon Heavy.

33.    During its debriefing, the Air Force acknowledged that the LSA RFP does not prioritize the Category C missions or otherwise indicate that Category C risk would drive the Air Force's award decision.  Nevertheless, the Air Force conceded that it in fact did consider the Category C mission to be an "absolute . . . driving factor in this RFP" because an unstated but "overarching goal" was to "get off the Delta IV Heavy," i.e., ULA's launch vehicle, which is currently the only certified system for launching the EELV's largest Category C payloads.

34.    The RFP does not, however, indicate that Category C missions are the "absolute ... driving factor" for this procurement.  The RFP does not even reference the Delta IV Heavy, let alone suggest that "getting off" of this rocket was a goal of the RFP.  Instead, the RFP reflects a different risk paradigm by specifying that all but a minimal number of anticipated NSS missions, including all launches before at least September 2025, will be Category A/B payloads.

35.    Had the Air Force advised SpaceX that the Air Force intended to put much greater weight on risks associated with Category C than risks associated with Category A/B solutions, SpaceX would have proposed differently.  Instead, the Air Force advised that it would make the award decision to the solutions that, based on the evaluation factors, "are most advantageous in achieving the Government's goal of assured access to space via two or more domestic, commercial launch services providers that also meet NSS requirements."

36.    <u>Space Shuttle Comparison.</u>  Relatedly, SpaceX learned that the Air Force based its predictions for the Starship development timeline (for purposes of the Technical Schedule subfactor evaluation) not on supporting information from SpaceX's proposal or SpaceX's unique, demonstrated ability to rapidly develop new

- 7 -

launch vehicles form the ground up, but rather on the eleven years the Government took to develop the Space Shuttle—from the start of 1971 until the end of 1981.

37.   SpaceX, however, is a modern launch services provider that uses development technology and capabilities that did not even exist in the 1970s and that enable far faster and more accurate analysis and development.  For example, SpaceX engineers employ advanced computer aided design and analysis methods, such as three-dimensional computational fluid dynamics, that enable design and test cycles orders of magnitude faster than was possible in the 1970s.  Miniaturized electronics and more capable flight computers also eliminate many of the restrictions and challenges that made computer hardware and software such a challenging aspect of the Space Shuttle development.

38.   SpaceX is also able to build on lessons learned and actual technology developed during other launch vehicle development programs, information not available during development of the Space Shuttle nearly half a century ago.

39.   SpaceX not only uses common processes and hardware between Falcon 9, Falcon Heavy, Dragon, and Starship, ██████████████████████████████.

40.   The Space Shuttle development, in contrast, relied on myriad subcontractors for each system. This would have created  a major schedule drag that does not exist for SpaceX.

41.   The Starship configuration is also considerably simpler than that of the Space Shuttle. ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████. This results in lower relative complexity of design, test, and manufacture.

42.   In sum, technological improvements and the accumulation of knowledge over the last four-plus decades, ██████████████████████, SpaceX's lack of reliance on major subcontractors, and Starship's simpler design all combine to make the Shuttle a remarkably inappropriate comparison for schedule estimation.

- 8 -

DECLARATION OF ██████████████████████

43.   <u>Government</u> ███████████████. SpaceX learned during the debriefing that the Air Force assessed a significant weaknesses to its proposal on the basis that SpaceX ████████████████████████████████ ██████████████████████████████████. None of the LSA RFP requirements directed offerors to ████████████████████████ ███████████████████████████. The RFP does not specify ███████ ███████████████████████████████████████████████████ ████████████████████████████████, or advise offerors that ███████████████████████████████████████████████████ ██████████████████████. Instead, the RFP invites offerors to propose their commercial solutions and advises that the Air Force initiated the LSA procurement to leverage those solutions. Had the Air Force structured the RFP to require the LSA solutions to ████████████████████████████████ ████████████████████████, SpaceX would have ███████████████ ███████████ differently to address that requirement.

44.   ████████████████████████. In the debriefing, SpaceX learned that the Air Force assessed a significant weakness to SpaceX because SpaceX proposed ███████████████████████████████████████████████████ ████. The LSA RFP did not require ██████████████████████ ████████. ████████████████████████████████████████ ███████████████████████████████████████████████████ ████████, and the Agreements Officer confirmed in its decision on SpaceX's initial objection to the LSA awards that "█████████████████████████ ██████████."

45.   Had the Air Force stated in the RFP that ████████████████ ████████████████████, SpaceX would have proposed differently to address that criterion.

- 9 -

46.   ████████████████. The Air Force overstated by ████████ the price to the Government of an award to SpaceX.  Specifically, the Air Force upwardly adjusted SpaceX's proposed price to include ████████████ ████████████████, even though the Phase 2 Competition RFP makes clear that the Air Force does not require ████████████████, and thus will not invest in SpaceX's development of that optional capability: ████████████ ████████████████████████████████████████████ ████████████████

### E.   Irreparable Harm to SpaceX

47.   SpaceX was not able to compete fairly for an LSA given the way the Air Force evaluated the SpaceX proposal and, without corrective action, SpaceX's exclusion will result in a long-term competitive disadvantage to SpaceX for the ongoing and future Air Force launch services procurements.

48.   The most obvious harm is the fact that each of SpaceX's direct competitors—ULA, Orbital and Blue Origin—will receive hundreds of millions of dollars in Government Investments, $1,080 million, $795 million and $500 million respectively, to meet the Air Force's NSS requirements while SpaceX will not.

49.   Of possibly greater significance is the fact that SpaceX will not benefit from the cooperative process and insights that the Air Force will provide to LSA awardees.  Specifically, the Air Force will collaborate with the LSA awardees to develop national security-specific features for their respective launch systems.  The Air Force will be extensively involved in technical decision-making regarding the various components of each offeror's proposed launch solution. The Air Force will offer input as each awardee designs the vehicles that will ultimately compete against SpaceX's proposed launch vehicles in the Phase 2 Competition.

50.   This partnership and support provides the LSA awardees with unique and solution-specific insights regarding the Air Force's launch service needs in the Phase 2 Competition and beyond.  Similar insights are not available to SpaceX without an

- 10 -

1   LSA award, which will undermine SpaceX's ability to anticipate and fully address the

2   Air Force's design priorities and technical requirements in the Phase 2 Competition.

3       51.   Moreover, this collaboration, coupled with major financial investments in

4   the LSA awardees' solutions, will give the Air Force a vested interest in the LSA

5   awardees' solutions that it will not have in SpaceX's proposed solution.

6       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

7   foregoing is true and correct.

8       Executed on 10 December 2019 in ████████████████ .

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -

DECLARATION OF ████████████████████████████████