**BARNES & THORNBURG LLP**
Scott E. Pickens (admitted *pro hac vice*)
scott.pickens@btlaw.com
Scott N. Godes (admitted *pro hac vice*)
Scott.Godes@btlaw.com
Michael A. Hordell (admitted *pro hac vice*)
Michael.Hordell@btlaw.com
Matthew J. Michaels (admitted *pro hac vice*)
MMichaels@btlaw.com
1717 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20006-4623
Telephone:   202-289-1313
Facsimile:   202-289-1330

**BARNES & THORNBURG LLP**
Matthew B. O'Hanlon (SBN 253648)
matthew.ohanlon@btlaw.com
2029 Century Park East, Suite 300
Los Angeles, CA 90067-3012
Telephone:   310-284-3880
Facsimile:   310-284-3894

Attorneys for Defendant-Intervenor
Blue Origin, LLC

REDACTED VERSION

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 2:19-cv-07927-ODW-GJS <br><br> **DEFENDANT-INTERVENOR BLUE ORIGIN, LLC'S OPPOSITION TO PLAINTIFF SPACE EXPLORATION TECHNOLOGIES CORP.'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD** <br><br> ███████████████ <br><br> Date:        March 2, 2020 <br> Time:        1:30 p.m. <br> Courtroom:   5D, 5th Floor <br>                     First Street Courthouse <br>                     350 W. 1st Street <br>                     Los Angeles, CA 90012 |

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

1

## **TABLE OF CONTENTS**

2
Page(s)

3   I.      INTRODUCTION .................................................................................1

4   II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................3

5   III.    THE COURT SHOULD DENY SPACEX'S MOTION .................................8

6         A.    The Legal Standard Governing The MJAR Requires SpaceX To
7               Have Challenged And Appealed The "Final Agency Action." ............8

8              1.     The Law Only Allows Challenges to "Final Agency Action." ..8

9              2.     SpaceX's Claims Should be Denied Because SpaceX Has
                      Not Challenged The Final Agency Action In Its MJAR. ...........9

10              3.     The Court Should Reject SpaceX's New Objections For
11                      Which It Failed To Exhaust Its Mandatory Administrative
                      Remedy..............................................................................15

12         B.    SpaceX Has Admitted That It Prepared And Submitted A "Poor"
13               Proposal. ......................................................................................18

14         C.    Even If The Court Looks Beyond SpaceX's Failure To Challenge
               The Final Agency Action, SpaceX's Motion Fails On The Merits. ....20

15              1.     SpaceX's Motion Ignores the Considerable Discretion
16                      Afforded the Agency Here. ....................................................20

17              2.     SpaceX's Complaints Should Be Disregarded As Either Mere
                      Disagreements Of Opinion, Or Untimely Challenges To The
18                    Ground Rules Of The Competition. ..........................................21

19               3.     SpaceX Submitted A Poor Proposal Because It Failed To
                      Adequately Utilize Multiple Rounds Of Discussions And
20                    Negotiation To Improve Its Proposal. .......................................24

21              4.     SpaceX Failed To Address The Agency's Technical Concerns
                      Resulting In Submission Of An Admittedly Poor Proposal......25

22         D.    The Court Should Disregard SpaceX's Frequent and Unwarranted
23                Attempts To Cite To And Argue From Materials Outside The
                 Administrative Record. ..................................................................27

24         E.    In No Event Is SpaceX Entitled To A Directed LSA Award Or
25               Permanent Injunctive Relief. ............................................................31

26               1.     SpaceX Is Not Entitled To A Directed Award...........................31

              2.     SpaceX Is Not Entitled To Injunctive Relief. ..........................32

27   IV.    CONCLUSION..............................................................................35

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

i

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Aguilera–Montero v. Mukasey*,
    548 F.3d 1248 (9th Cir. 2008) ................................................................. 11

5

6

*Akiak Native Cmty. v. U.S. Postal Serv.*,
    213 F.3d 1140 (9th Cir. 2000) ................................................................... 8

7

8

*Allied Tech. Grp., Inc. v. United States*,
    649 F.3d 1320 (Fed. Cir. 2011) ............................................................... 20

9

*Allis-Chalmers Corp., Hydro-Turbine Div. v. Friedkin*,
    635 F.2d 248 (3d Cir. 1980) .................................................................... 34

10

11

*Alpha Painting & Constr. Co. Inc. v. Delaware River Port Auth. of
    Pennsylvania & New Jersey*,
    853 F.3d 671 (3d Cir. 2017), *as amended* (Apr. 26, 2017) ............... 31, 34

12

13

*Arrington v. Daniels*,
    516 F.3d 1106 (9th Cir. 2008) ......................................................... 8, 9, 27

14

15

*Axiom Res. Mgmt., Inc. v. United States*,
    564 F.3d 1374 (Fed. Cir. 2009) ............................................................... 28

16

17

*Banknote Corp. of Am. v. United States*,
    56 Fed. Cl. 377 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) ............... 22

18

19

*Barron v. Ashcroft*,
    358 F.3d 674 (9th Cir. 2004) .............................................................. 17, 18

20

21

*Battelle Memorial Inst.*,
    B-299533, 2007 WL 1428685 (Comp. Gen. May 14, 2007) ................... 26

22

23

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................ 10

24

25

*Blue & Gold Fleet, L.P. v. United States*,
    492 F.3d 1308 (Fed. Cir. 2007) .......................................................... 16, 22

26

27

*Camp v. Pitts*,
    411 U.S. 138 (1973) ................................................................................ 27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –

# **TABLE OF AUTHORITIES**

**Page(s)**

*Choctaw Mfg. Co. v. United States*,
    761 F.2d 609 (11th Cir. 1985) ..............................................................31, 32

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ..............................................................................27, 29

*City of Las Vegas, Nev. v. F.A.A.*,
    570 F.3d 1109 (9th Cir. 2009) ..............................................................28, 29

*Delta Data Sys. Corp. v. Webster*,
    744 F.2d 197 (D.C. Cir. 1984) .........................................................31, 32, 35

*Distributed Solutions, Inc.*,
    B-416394, 2018 WL 3955502 (Comp. Gen. Aug. 13, 2018) .......................25

*Duncanson-Harrelson Co. v. Director, Office of Worker's Compensation
    Programs*,
    644 F.2d 827 (9th Cir. 1981) .......................................................................17

*E.W. Bliss Co. v. United States*,
    77 F.3d 445 (Fed. Cir. 1996)........................................................................20

*Eagle Const. Corp. v. United States*,
    4 Cl. Ct. 470 (1984) ....................................................................................16

*Engility Corp.*,
    B-41312.3, 2017 WL 930351 ......................................................................21

*Family Inc. v. U.S. Citizenship & Immigration Servs.*,
    469 F.3d 1313 (9th Cir. 2006) ......................................................................9

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
    602 F.3d 1125 (9th Cir. 2010) ....................................................................29

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985)...............................................................................9, 31

*Fort Carson Support Servs. v. United States*,
    71 Fed. Cl. 571 (2006)..........................................................................26, 27

*Gallup, Inc*,
    B-410126, 2014 WL 4793047  ....................................................................21

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Gemmel v. Systemhouse, Inc.*,
   No. 04-189, 2009 WL 3157262 (D. Ariz. Sept. 28, 2009) ...................................... 19

*Glenn Defense Marine (Asia) PTE Ltd. v. United States*,
   97 Fed. Cl. 568 (2011) ............................................................................................ 20

*Great Lakes Shipyard*,
   B-408210, 2013 WL 3223422 (Comp. Gen. Jun. 26, 2013) .................................... 26

*Herrera v. U.S. Citizenship & Immigration Servs.*,
   571 F.3d 881 (9th Cir. 2009) ............................................................................... 8, 11

*Honeywell, Inc. v. United States*,
   870 F.2d 644 (Fed. Cir. 1989) ................................................................................. 20

*Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*,
   730 F.3d 1024 (9th Cir. 2013) ................................................................................. 33

*Int'l Resource Recovery, Inc. v. United States*,
   60 Fed. Cl. 1 (2004) ........................................................................................... 25, 26

*Inter-Tribal Council v. Department of Labor*,
   701 F.2d 770 (9th Cir. 1983) (*per curiam*) ............................................................. 17

*Iron Bow Techs., LLC v. United States*,
   133 Fed. Cl. 764 (2017) ........................................................................................... 15

*James v. U.S. Department of Health & Human Services*,
   824 F.2d 1132 (D.C. Cir. 1987) ............................................................................... 18

*KSC Boss Alliance, LLC*,
   142 Fed. Cl. 368 (2019) ..................................................................................... 25, 26

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ................................................................................. 29

*Management and Technical Services Alliance Joint Venture*,
   B-416239, 2018 WL 327404 ................................................................................... 21

*Marathon Oil Co. v. United States*,
   807 F.2d 759 (9th Cir. 1986) ................................................................................... 17

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

*Matter of Blue Origin Florida*, *LLC*,
  B-417839.1, 2019 WL 6250708 (Comp. Gen. Nov. 18, 2019) ........................... 4, 34

4

5

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) ................................................................................. 17

6

*Microwave Monolithics, Inc.*,
7
  B-413088, 2016 WL 4259008 (Comp. Gen. Aug. 11, 2016) ................................. 26

8

*Myers v. Bethlehem Shipbuilding Corp.*,
9
  303 U.S. 41 (1938) .................................................................................... 16

10

*NCR Corp. v. United States*,
11
  915 F.2d 1584 (Fed. Cir. 1990) ....................................................................... 20

12

*NLRB v. Int'l Bhd. of Elec. Workers, Local 48*,
  345 F.3d 1049 (9th Cir. 2003) ........................................................................... 9
13

14

*One Largo Metro, LLC v. United States*,
  109 Fed. Cl. 39 (2013) ................................................................................. 20
15

16

*Parravano v. Babbitt*,
  837 F.Supp. 1034 (N.D. Cal. 1993), *aff'd*, 70 F.3d 539 (9th Cir. 1995) ................. 29
17

*Princeton Combustion Research Labs., Inc. v. McCarthy*,
18
  674 F.2d 1016 (3d Cir. 1982) ....................................................................... 31

19

*R & W Flammann GmbH v. United States*,
20
  339 F. 3d 1320 (Fed. Cir. 2003) ..................................................................... 17

21

*Rattlesnake Coal. v. U.S. E.P.A.*,
22
  509 F.3d 1095 (9th Cir. 2007) ....................................................................... 10

23

*Reid v. Engen*,
24
  765 F.2d 1457 (9th Cir. 1985) ....................................................................... 17

25

*Remote Diagnostic Techs., LLC*,
  B-413375.4, 2017 WL 909056 ..................................................................... 21
26

27

*Sea-Land Serv., Inc. v. Brown*,
  600 F.2d 429 (3d Cir. 1979) ....................................................................... 34, 35

28

1

## **<u>TABLE OF AUTHORITIES</u>**

2
                                                                                          **Page(s)**

3   *SEC v. Chenery*,
        318 U.S. 80 (1943) ............................................................................ 31
4

5   *Sierra Forest Legacy v. Sherman*,
        646 F.3d 1161 (9th Cir. 2011) .......................................................... 33
6

7   *Space Exploration Technologies Corp. v. United States*,
        144 Fed Cl. 433 (2019) ............................................................ 4, 5, 7

8   *Structural Assocs., Inc./Comfort Sys. USA (Syracuse) Joint Venture v.*
9       *United States*,
        89 Fed. Cl. 735 (2009) ............................................................... 25, 26
10

11  *Tetra Tech, Inc. v. United States*,
        137 Fed. Cl. 367 (2017) ........................................................... 22, 23
12

13  *Top Set Int'l, Inc. v. Neufeld*,
        2007 WL 9735001 (C.D. Cal. July 5, 2007) ................................ 8, 15
14

15  *Turner Constr. Co. v. United States*,
        645 F.3d 1377 (Fed. Cir. 2011) ........................................................ 17
16

17  *Unemployment Compensation Commission of Territory of Alaska v.*
        *Aragon*,
18      329 U.S. 143 (1946) .......................................................................... 17

19  *United States v. L.A. Tucker Truck Lines, Inc.*,
        344 U.S. 33 (1952) ............................................................................ 17
20

21  *Universal Health Services Inc. v. Thompson*,
        363 F.3d 1013 (9th Cir. 2004) ..................................................... 17, 18
22

23  *Voith Hydro, Inc. v. United States*,
        143 Fed. Cl. 201 (2019) .................................................................... 27
24

25  *Wagner v. Nat'l Transp. Safety Bd.*,
        86 F.3d 928 (9th Cir. 1996) ................................................................ 8

26

27

28

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Other Authorities**

4

5 U.S.C.

5

§ 704.................................................................................................................. 10

6

§ 706.................................................................................................................... 8

7

10 U.S.C. § 2273(b) ............................................................................................. 4

8

9

Administrative Procedure Act....................................................... 8, 10, 15, 27

10

Fed. R. Evid. 801(d)(2) ....................................................................................... 20

11

Fed. R. Evid. 902(5)............................................................................................. 19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

## I.     INTRODUCTION

Plaintiff Space Exploration Technologies Corp. ("SpaceX") challenges the United States Air Force Space and Missile Systems Center's ("Agency" or "Air Force") evaluation and award decisions under the Launch Service Agreements ("LSA") Request for Proposals ("RFP") to develop space launch systems for national security missions, issued pursuant to the Department of Defense's ("DOD")' authority to enter into Other Transaction agreements.  As discussed more fully below, this Court should deny SpaceX's Motion for Judgment on the Administrative Record ("MJAR").

First, SpaceX's MJAR fails to substantively challenge the "final agency action." Instead, SpaceX asks the Court to evaluate the Agency's LSA award decisions, rather than the Agency's final decision on SpaceX's objections to those awards.  (*Infra* at § III.A.1.).  Specifically, after SpaceX was not awarded a contract under the LSA RFP, it appealed its loss within the Agency using the mandatory appeal process specified in the RFP, and received a final decision from the specified Agency official.  But SpaceX's MJAR fails to substantively challenge that Final Agency Action – the Agency's decision on that appeal, as discussed in more detail below.  (*Infra* at § III.A.2)  SpaceX also asks the Court to rule on new objections to the Agency's actions for which SpaceX did not seek prior administrative review as required.  Those new claim assertions are improper and should be rejected.  (*Infra* at § III.A.3).

Second, even if SpaceX has properly asserted a challenge to the Agency's LSA award decisions, its repeated arguments that it was the "superior" offeror fundamentally misunderstands the Agency's purpose in structuring the LSA RFP and selecting the LSA awardees, and ignores SpaceX's own admission that it wrote a "poor proposal" in response to the LSA RFP.  (*Infra* at § III.B).  SpaceX's CEO and Chief Technology Officer (Elon Musk) expressly admitted to the DOD in a face to face meeting that SpaceX wrote a poor proposal for the LSA RFP, effectively agreeing with the substance of the Agency's evaluation concerns for SpaceX's LSA proposal.  That admission by Mr. Musk, who leads SpaceX (*see* https://www.spacex.com/elon-musk),

was memorialized in official DOD documents arising from a December 2018 meeting between Mr. Musk and the acting DOD Secretary of Defense and negates, as a binding party admission, SpaceX's arguments here that it should have received an LSA award. (*Infra* at § III.B).  And, as discussed below, the Agency had a different purpose in selecting LSA awardees.  (*Infra* at § III.C.2).  The Agency's evaluation and award decision were reasonable and well within the Agency's substantial discretion.  The evaluation and award decision were fully consistent with fundamental principles of Federal procurement law that:  (a) a contracting agency has substantial discretion to determine its needs and the best method to accommodate them; (b) an agency has substantially heightened discretion to define the requirements that meet its needs and which achieve the highest possible effectiveness when the subject of the agency's acquisition relates to national defense or human safety, as is the case here; (c) review of the Agency's technical evaluation is entitled to "the greatest deference," because it is the Agency that bears the impact of its technical evaluation decision; and (d) an offeror must write a proposal that fully responds to an agency's RFP requirements, and the offeror bears the consequences of failing to do so.  These factors are all the more significant here because of the use of unique statutory "Other Transaction" agreements which are not procurement contracts, and which vest the Agency with enormous discretion to pursue its objectives with minimal regulations or guidelines.  Against this framework, SpaceX has simply failed to effectively challenge the Agency's exercise of its substantial discretion, requiring that its motion be denied.  SpaceX's difference of opinion as to what the Agency should be funding, and its blatant attempt to substitute its judgment concerning the Agency's evaluation, does not show that the Agency's judgment is unreasonable or improper.

Third, SpaceX improperly and repeatedly attempts to cite to and rely on materials outside the administrative record in support of its repetitive arguments.  As set forth in Blue Origin's evidentiary objections filed concurrently herewith, the Court should recognize that SpaceX's flawed reliance on such materials is improper, and a

1   clear confirmation that the MJAR lacks merit and should be denied.  (*Infra* at § III.D).

2        In short, the Agency's award determination was proper, and SpaceX has not

3   presented a sustainable challenge to either the award determination, or the Agency's

4   final decision on its protest allegations.  But, even if the Agency's evaluation were in

5   some way flawed (which it is not), in no event is SpaceX entitled to a directed LSA

6   award or permanent injunctive relief.  (*Infra* at § III.E).  That relief would improperly

7   displace the Agency's exclusive role in determining which offerors' proposals best

8   justify LSA funding to achieve the Agency's LSA objectives.

9   **II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

10       SpaceX challenges the Air Force's evaluation and award decisions for the LSA

11  RFP to provide funding to develop launch vehicle system prototypes for space launch

12  services for National Security missions, issued pursuant to DOD's authority to enter

13  into Other Transaction agreements.  The LSA RFP at issue in this litigation concerns

14  the effort of the Agency to develop, through cost-shared funding, additional

15  competitors for the National Security Space ("NSS") launch market.  Contrary to

16  SpaceX's arguments, the LSA RFP was not intended to "reward" further efforts by the

17  self-described "leading," purportedly "fully proven" space launch provider, as SpaceX

18  characterizes itself.  *See* MJAR [Dkt. No. 170] at 2, 4, 5, 11, 12, 20, 24, 28.  Instead, it

19  was to assist in developing new commercial launch service providers by providing

20  funding on a cost-shared basis for LSAs.  RFP Section 1.1, Administrative Record

21  ("AR") Tab 35 at 1065-1066.  Those LSAs were intended to allow the Air Force to

22  competitively procure launch services in the future from domestic commercial launch

23  service providers that meet Evolved Expendable Launch Vehicle ("EELV") Program

24  requirements.  AR Tab 35 at 1065-1066.  The LSAs facilitate development of at least

25  three EELV Launch System prototypes as early as possible, allowing those launch

26  systems to mature prior to a future selection of two NSS launch service providers for

27  Phase 2 Launch Service Procurements ("LSPs"), starting in FY20.  AR Tab 35 at 1066-

28  1067.   The LSP Phase 2 procurement is currently underway, and offerors have

3

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

submitted proposals which are under review by the Air Force.  *See Matter of Blue Origin Florida*, *LLC*, B-417839.1, 2019 WL 6250708 (Comp. Gen. Nov. 18, 2019) (available at www.gao.gov/assets/710/702867.pdf).

The United States Court of Federal Claims ("COFC") decision in this litigation sets forth the detailed factual and procedural background for the action it transferred to this Court, and also describes the unique authority and features of the Other Transaction agreements at issue, which need not be repeated here.  *See Space Exploration Technologies Corp. v. United States*, 144 Fed Cl. 433 (2019).[1]  Because SpaceX did not appeal that decision, those factual findings are final and may be relied upon by the Court.

The National Security Space Launch program—previously known as the EELV program (the "Program")—is charged with procuring launch services to meet the Government's national security space launch needs.  AR Tab 19 at 786.  The Program has an overarching need through Fiscal Year ("FY") 30 to address the challenges of maintaining affordability and assured access to space, which requires the Air Force to sustain the availability of at least two families of space launch vehicles and a robust space launch infrastructure and industrial base.  *Id.* at 787; *see also* 10 U.S.C. § 2273(b); 144 Fed. Cl. at 436.

**The LSA RFP**

The LSA RFP involves a competition for the development of space launch vehicles (the "LSA Competition").  AR Tab 19 at 788.  During the LSA Competition, the Air Force sought to develop "launch system prototypes, to include the development and test of any required [rocket propulsion systems], the launch vehicle and its subsystems, infrastructure, manufacturing processes, test stands, and other items required for industry to provide domestic commercial launch services that meet all [National Security Space] requirements."  AR Tab 38 at 1261.  The prototype sought to

---

[1] For the Court's convenience, the COFC's decision is attached as Exhibit 1 to the Declaration of Scott E. Pickens filed concurrently herewith.

4

OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –

be developed during the LSA competition includes "[a] fully developed and certified EELV Launch System, including the validation of all non-recurring engineering (NRE) work." *Id.*  And so, the awardees of the LSA will receive funding from the Air Force and these awardees "will perform prototype development, including system design and development, risk reduction activities, test and evaluation activities, and technical demonstration of system capabilities." AR Tab 19 at 796; 144 Fed. Cl. at 437.

The Air Force expects that following its investment "in the development of prototypes for launch systems," those systems can be "used to provide commercial launch services that will also be extended to provide [National Security Space] launch services." AR Tab 19 at 793.  The Air Force also acknowledges that the LSAs will "facilitate development of at least three EELV Launch System prototypes as early as possible, allowing those launch systems to mature prior to a future selection of two [National Security Space] launch service providers for Phase 2 launch service procurements, starting in FY 20[20]." AR Tab 38 at 1260; 144 Fed. Cl. at 437.

The LSA RFP (AR Tab 35 at 1065-1066) specified as follows:

### 1.1 Background and Overview

[. . .] The goal of the EELV acquisition strategy is to leverage commercial launch solutions in order to have at least two domestic, commercial launch service providers that also meet NSS requirements, including the launch of the heaviest and most complex payloads.

\*       \*       \*

The focus of this solicitation is to leverage industry's commercial launch solutions and ensure they are modified to meet NSS requirements. The Launch Service Agreements (LSAs) facilitate development of at least three EELV Launch System prototypes as early as possible, allowing those launch systems to mature prior to a future selection of two NSS launch service providers for Phase 2 launch service procurements, starting in FY20. The development of launch system prototypes under this Agreement includes completing the development of any RPSs [Rocket Propulsion Systems] required, as applicable for the launch systems proposed.

### 1.1.1 Launch Service Agreements

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

While the technical maturation and RPS investments are important enablers, the key step [. . .] will be public private partnership agreements that partially fund industry's new and/or upgraded launch system solutions. These LSAs are intended to allow the Air Force to competitively procure launch services in the future from domestic commercial launch service providers that meet EELV requirements. [. . .] The goal is to use innovative business arrangements that leverage industry's ongoing efforts to develop new and/or upgraded commercial launch systems. These public-private agreements will be tailored to each launch service provider's needs in order to enable commercial launch systems to meet all NSS requirements. Subsequent procurements will allow launch system fixed costs to be shared across more launches, including commercial and civil, and will reduce the overall cost to the Air Force.

Through this solicitation, the Government requests proposals for shared public-private investment in the development of launch system prototypes, to include the development and test of any required RPSs, the launch vehicle and its subsystems, infrastructure, manufacturing processes, test stands, and other items required for industry to provide domestic commercial launch services that meet all NSS requirements.

\*    \*    \*

The LSA RFP (AR Tab 35) described the LSA competition process, (RFP Section 1.2). RFP Section 1.3 Basis for Agreement Awards stated as follows:

### 1.3 Basis for Agreement Awards

Agreements will be awarded in accordance with the Other Transaction Authority for Prototype Projects (10 U.S.C. § 2371b). Unless specifically addressed in the solicitation, the FAR and its supplements do not apply to this selection process.

[. . .] The Government will award a maximum of one agreement for one EELV Launch System prototype per company. The Government plans to award a portfolio of at least three agreements, but reserves the right to award any number of agreements, including none. The actual number of awards will be determined based on several factors including, but not limited to, number and quality of proposals received, amount of funding requested by Offerors, and total amount of funding available.

AR Tab 35 at 1068.

Finally, the RFP defined the Agency appeal process and specified how objections to the terms of the solicitation, <u>evaluation of proposals, or award of agreements</u> were to be handled (RFP Section 1.4, AR Tab 35 at 1068) as follows:

6

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

### 1.4 Objections

Any objections to the terms of this solicitation, evaluation of proposals, <u>or award of agreements must be presented in writing to the Agreements Officer (AO), within ten calendar days</u> of (1) the release of this solicitation or (2) <u>the date the objector knows or should have known the basis for its objection.</u> Objections should be provided in letter format, clearly stating that it is an objection to this solicitation, or to the evaluation or award of an agreement, providing a clearly detailed factual statement of the basis for objection. Failure to comply with these directions is a basis for summary dismissal of the objection. <u>The AO will adjudicate all objections in coordination with the Competition Advocate.</u>

AR Tab 35 at 1068 (emphasis added).

### The LSA Awards

The Air Force issued the LSA RFP on October 5, 2017.  AR Tab 35.   On March 21, 2018, the Assistant Secretary of the Air Force (Acquisition, Technology & Logistics) determined that "exceptional circumstances surrounding the [Program] and the domestic launch industry justify the use of a transaction that provides for innovative business arrangements and provide[s] an opportunity to expand the defense supply base in a manner that would not be feasible under a contract."  AR Tab 47 at 1349.  And so, the Air Force issued the LSA RFP pursuant to DOD's authority to enter into other transactions. *Id.*; 144 Fed. Cl. at 438.

SpaceX and three other companies—United Launch Alliance, LLC ("ULA"), Blue Origin, LLC ("Blue Origin"), and Orbital Sciences Corporation ("Orbital ATK")—submitted proposals in response to the LSA RFP.  *See* AR Tab 136 at 41752. Following discussions, negotiations, and the receipt of revised proposals, the Air Force awarded LSAs to Blue Origin, ULA, and Orbital ATK in October 2018.  *Id.* at 41753. The LSAs awarded to ULA, Blue Origin, and Orbital ATK provide these awardees with investment funding to develop launch vehicle prototypes.  AR Tab 38 at 1261.

On December 10, 2018, after receiving a debriefing and answers to submitted questions, SpaceX filed with the Agency its objection to the evaluation of proposals and award decision, using the RFP's mandatory dispute and objection procedures

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1    specified in LSA RFP Section 1.4 above.  AR Tab 150; Compl. at ¶ 76; Compl. Ex. R
2    at 2; Supplemental Complaint at ¶¶ 111—114.   On April 18, 2019, the Agency
3    Agreements Officer ("AO") issued its final decision denying SpaceX's objections (the
4    "AO decision").[2]   AR Tab 152; Compl. at ¶ 79; Compl. Ex. R at 1; Supplemental
5    Complaint at ¶ 114.

6    **III.    THE COURT SHOULD DENY SPACEX'S MOTION**

7    **A.    The Legal Standard Governing The MJAR Requires SpaceX To Have**
8    **Challenged And Appealed The "Final Agency Action."**

9    **1.    The Law Only Allows Challenges to "Final Agency Action."**

10   As this Court has noted, only "final agency action" is subject to the Court's
11   review in this Case.  *Top Set Int'l, Inc. v. Neufeld*, 2007 WL 9735001, at *1 (C.D. Cal.
12   July 5, 2007) (*citing Americopters, LLC v. F.A.A*., 441 F.3d 726, 735 (9th Cir. 2006)
13   ("The APA only allows judicial review of 'final agency actions'")), *aff'd*, 318 F. App'x
14   578 (9th Cir. 2009) (noting that the court was "reviewing only the [Administrative
15   Appeals Office]'s final decision").  The Administrative Procedure Act ("APA") permits
16   a petitioner desiring to challenge <u>the final action</u> of an administrative agency to seek
17   review in a federal district court.  5 U.S.C. § 706.  The court must "hold unlawful and
18   set aside agency action, findings, and conclusions found to be," among others,
19   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
20   *Id.* § 706(2)(A).  The reviewing court considers only the "final agency action" under
21   the APA.  *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th
22   Cir. 2009).  Review is also confined to the administrative record.  *Arrington v. Daniels*,
23   516 F.3d 1106, 1112 (9th Cir. 2008).   A court reviews the agency's purely legal
24   questions *de novo*.  *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1144 (9th
25   Cir. 2000); *Wagner v. Nat'l Transp. Safety Bd.*, 86 F.3d 928, 930 (9th Cir. 1996).  The
26   court, however, only reviews the agency's factual findings for substantial evidence;

27

28   _____
     [2] For the Court's convenience, the AO decision is attached as Exhibit 2 to the Declaration of Scott E.
     Pickens filed concurrently herewith.

**Opposition To SpaceX's Motion For Judgment On The Certified Administrative Record –**

that is, the agency action is valid if a "reasonable basis exists" for the agency's decision.  *Arrington*, 516 F.3d at 1112; *see also NLRB v. Int'l Bhd. of Elec. Workers, Local 48*, 345 F.3d 1049, 1054 (9th Cir. 2003).  The reviewing court may shall only set aside the agency's factual findings if "the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (internal quotation marks omitted).  If the court determines that the agency action is invalid, it generally must remand to the agency for further proceedings. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## 2.    SpaceX's Claims Should be Denied Because SpaceX Has Not Challenged The Final Agency Action In Its MJAR.

On October 9, 2018, the Source Selection Authority, Ms. Joy M. White, made the initial award decisions to award Launch Service Agreements to three offerors – Blue Origin, ULA, and Orbital ATK.  *See* AR Tab 136 at 41745-41753.  On December 10, 2018, SpaceX filed with the Agency its 70-page objection to the evaluation of proposals and award decision, in accordance with the mandatory appeals process specified in the LSA RFP Section 1.4 above.  AR Tab 150.  Regarding the process for appeal, RFP Section 1.4 clearly states that "[f]ailure to comply with these directions is a basis for summary dismissal of the objection."  AR Tab 35 at 1068.  SpaceX submitted its initial objections to the award decision to the Agreements Officer, Mr. David Sharp, as specified in RFP Section 1.4.  *See* AR Tab 150.  In accordance with Section 1.4, the Agreements Officer carefully reviewed the objections in coordination with the Space and Missile Systems Center ("SMC") Competition Advocate, ████ ████████.  *See* AR Tab 152 at 43100-43106.  On April 18, 2019, the Agreements Officer issued the Agency's final decision upholding the SSA's initial award decisions and rejecting SpaceX's award and evaluation objections.  *See* Exhibit 2 hereto. However, as explained above, SpaceX has focused on the Agency's initial LSA award decisions, and has ignored the Agency's Final Decision on its protest allegations.  *See*,

1   *e.g.,* MJAR [Dkt. No. 170] at 6 (unlawful award decision); 17 (Court should hold
2   award decision unlawful); 15 (challenged award decision); 20 ("award decision is
3   arbitrary and capricious"); 34 (agency's "award decision violates the law").

4          Where a claim is brought pursuant to the APA, the agency action sued upon must
5   be "final agency action for which there is no other adequate remedy in a court
6   ...." 5 U.S.C. § 704; *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1104-05 (9th Cir.
7   2007). Here, there was a mandatory appeals process, which resulted in a final agency
8   action, the Agreements Officer's decision, and <u>SpaceX fails to substantively challenge</u>
9   <u>this decision in its Motion</u>. In contrast to the traditional "disappointed bidder"
10  authorities relied upon by SpaceX (MJAR at 15) where an agency's contract award
11  decision could be viewed as the final agency action because it is the <u>only</u> agency
12  action, the RFP at issue here contained a binding and mandatory appeal process for the
13  Agency's consideration of objections, and led to a final agency decision.

14         The AO Decision is the final agency action because: (1) it is the consummation
15  of the Agency's decision-making process, and (2) it is the action that determines the
16  rights and obligations of the parties or is one from which legal consequences will flow.
17  *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Here, the agency decision-making
18  process was consummated when SpaceX raised objections to the Agreements Officer,
19  and the AO issued a written decision upholding the Agency's award decision and
20  denying SpaceX's objections. As the Agreements Officer's decision and rationale are
21  unassailed, the decision should stand and the MJAR should be denied because it fails
22  to provide any basis for overturning the Agency's final decision.

23         The LSA RFP mandates that any objection to the Agency's evaluation or award
24  decision must be submitted to the Agreements Officer within 10 days of when the
25  offeror knew or should have known of the objections. *See* RFP Section 1.4, AR Tab 35
26  at 1068. SpaceX understood and utilized this appeals process, but failed to address that
27  decision here; rather, SpaceX merely challenges the Agency's interim LSA award
28  decision.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

SpaceX's claims should be denied because they fail to address the substance of the AO decision, *i.e.*, the final agency action. As the RFP stipulates and the AO decision shows, the Agreements Officer plainly possessed authority and discretion to review the Source Selection Authority's award decisions. *See id.* Where, as here, a reviewing agency entity conducts a *de novo* review and issues a final decision, the Court reviews that final decision and not earlier agency action. *Herrera,* 571 F.3d at 885 (finding that review of the Administrative Appeals Office's decision was appropriate because it was the final agency decision); *cf. Aguilera–Montero v. Mukasey,* 548 F.3d 1248, 1250 (9th Cir. 2008) ("When the [Board of Immigration Appeals ('BIA')] conducts a de novo review and issues its own decision, we review the BIA's decision rather than the [immigration judge's]." (alteration and internal quotation marks omitted)).

Furthermore, the AO decision considers and addresses all of SpaceX's initial objections raised in the Agency appeal. The AO decision provides, after review of SpaceX's 70-page protest, thoughtful analysis and rationale for the key reasons SpaceX fell short of winning an LSA award. By failing to substantively address any purported errors in the AO's final decision in its MJAR, SpaceX attempts to take a second bite at the apple and ask the Court to review the Agency's initial findings of fact and analysis without relying on the expertise and judgment of the Agreements Officer's final decision. As a result, SpaceX's MJAR fails to provide a basis for relief by this Court. The following are examples of key SpaceX arguments that have already been addressed by the Agreements Officer.

In Section IV.A of the MJAR, SpaceX argues that the Agency made award to companies that are not commercial providers, in contravention of the RFP and Congressional direction. *See* MJAR [Dkt. No. 170] at 17-18. The AO fully adjudicated this issue, stating:

> SpaceX also alleges that, contrary to the RFP, the award decision undercut the objectives of the RFP because commercial launch systems were not leveraged. I reject the false distinction between "commercial" and

11

> "Government-specific" launch systems in SpaceX's objection. For purposes of this acquisition, all offerors proposed commercial solutions. The RFP contained no restrictive interpretation of a commercial solution which required past commercial experience or success, or even consideration of future commercial business or market projections. Rather the Government accepted all offers as commercial using existing definitions in Title 51, United States Code, and considered the commercial availability of the launch systems as prescribed by Section 1605 of the Fiscal Year 2018 National Defense Authorization Act.

*See* AR Tab 152 at 43102.

Again, in MJAR Section IV.A, SpaceX argues that the Agency should have amended the LSA to assign risk to offerors with common components. *See* MJAR [Dkt. No. 170] at 19-20. The Agreements Officer responded to this objection as well, noting, *inter alia*, that it was untimely under RFP Section 1.4:

> SpaceX further alleges that the Government failed to assign the same risk to all offerors or common components. However, SpaceX cites no risks assessed against common components that should be attributed to another proposal, and I am aware of none. SpaceX also appears to assert that risks should have been identified because of the commonality of a component across launch systems or because of reliance on common subcontractors. The SSA did consider risk from common components in making the award determination. The SSA stated, "the Government has used common propulsion systems in its current launch systems, demonstrating that this is an acceptable approach. In addition, the Government did not include an RFP evaluation criteria related to the use of common engines as part of the overall portfolio selection because it was not considered critical in assessing the design approaches or the likelihood of achieving the Government's objectives." I disagree with SpaceX's untimely objection to the RFP evaluation criteria; the source selection handled this issue properly. Moreover, the Government, using reasoned judgment, has discretion in developing evaluation criteria to meet its requirements.

*See* AR Tab 152 at 43104.

In Section IV.B, SpaceX complains that the cost evaluation was unfair because the Agency included the cost of SpaceX's ▮▮▮▮▮▮ in its price, whereas the Agency did not include the cost of ULA's EELV Launch Capability ("ELC") contract in ULA's price. *See* MJAR at 21-24. The Agreements Officer fully considered and adjudicated this objection, in the final decision, stating:

> SpaceX also alleges that ▮▮▮▮▮ for the ▮▮▮▮▮▮▮▮▮ should not have been incl▮▮▮ total inv▮ offerors were not treated the same ▮▮▮▮▮▮▮▮▮▮

12

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

submission, Spac████████████████████████████████
lume was ████████████████████████████████████████
████████████████████████████████████ SpaceX submi
█████████████. SpaceX chose which
fic with respect to the
████████████ included as well as the cutoff date to begin cost share, and there was never any disagreement or confusion about the issue throughout the source selection. In the Objection, it appears that SpaceX is making an untimely challenge to the established evaluation criteria and is attempting to supplant Government judgment with its own opinion. Moreover, I did not find any unfair or unequal treatment with respect to the Government's evaluation, and no bias against SpaceX in this regard. Each proposal was evaluated on its own merits in accordance with the RFP.

*See* AR Tab 152 at 43104.

In MJAR Section IV.C.1, SpaceX claims the Agency improperly discounted Category A/B Mission Risks. *See* MJAR at 25-28. Again, the Agreements Officer considered and provided a written response to this objection, stating:

I also reject SpaceX's attempt to substitute its opinion as to the risk of the offerors' proposals for that of the Government's reasoned determination. Notably, this ground also evidences SpaceX's misunderstanding of the RFP. The RFP did not require the Government to assign an overall lower risk rating because a portion of the SpaceX offer had few weaknesses. The RFP did not have separate risk ratings for Category A/B missions and Category C missions. The Govern████████████████████████████████
███████████████████████████████████████████████
for Category A/███████████ does not make the Governme
that BFR is a ███████████ launch solution █████ Category C
missions unreasonable, nor ████████ into question the ███ risk rating given that the solution or Category C missions impact██ e risk with respect to SpaceX's proposed solution for the overall prototype development.

*See* AR Tab 152 at 43103-43104.

Further, in Section IV.C.1, SpaceX claims the Agency unfairly assessed risk to SpaceX's ████████████████ approach in regards to the April 1, 2022 need date. *See* MJAR at 28, n.13. SpaceX made a similar argument in its Objections, which the Agreements Officer addressed, stating:

████████████████ t the Government misunderstood the proposed ████████
███████████████████████████████████████████████████████████████





████████. This was not an area of misunderstanding for the Government.
████████████████████████████████████████ sed by SpaceX. Simply put,
an ████████████████████████████████████ is not something that the
Gov████████████████████████████████████████████e in a required
timeframe. The prospect of a future ████████████████████ after contract
award was rightfully not accepted a ████████████████ l commitment.
SpaceX's mere disagreement with the Government's evaluation judgment
on the merits of its proposal does not mean that the Government
misunderstood the proposal, nor does such disagreement provide a basis to
sustain SpaceX's Objection.

*See* AR Tab 152 at 43103.

In Section IV.C.2, SpaceX claims the Agency improperly assessed a ████████████
████████████ to SpaceX based on SpaceX's proposal to ████████████████████████
████████████████████████████████████ *See* MJAR at 30-31.  The
Agreements Officer addressed this, stating:

████████████████████████████████████████FP, the Government made ████████
████████████████████████████████████████████
████████as ████████████████████████████████████
for ████████████████████████████████████
████On the ████████████████████████████████████ent allowed ████████
████████████████████████████ the RFP p
████████████████████████████roach. SpaceX was
evaluated to hav ████████ risk rating based, in part, on this proposed
approach. Since ████████ red ████████████████████████████████████t
the government ████████████████████████████████████████
Moreover, SpaceX's mere
risk rating is not a basis to sustain the Objection. To the extent Sp
disagrees with the stated evaluation scheme of the RFP, the objection
ground is untimely.

*See* AR 43102 (Tab 152).

In Section IV.C.3, SpaceX alleges that the Agency improperly assigned risk
because it concluded that SpaceX's ████████████████████████████████████████
████████████████████. *See* MJAR at 31.  The addressed this objection, stating:

████████████████so alleges th████████████████
████████████████approach of ████████████████
████████████████well documen████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

██████████████████████████████████

███████████████ment with the evaluation findings is not a basis to disturb the LSA award decision.

*See* AR Tab 152 at 43103.

Rather than substantively challenge the Agreements Officer's reasonable review and consideration of SpaceX's objections in the Agency final decision, as required by the APA, SpaceX improperly asks the Court to adjudicate the issues without reliance on Agency expertise, contrary to the LSA RFP and the APA standard of review. The Court should not review *de novo* the same issues presented to and resolved by the Agreements Officer's administrative adjudication of the facts and allegations at issue. *See Top Set Int'l, Inc.*, 2007 WL 9735001, at *1. As such, it is the substance of the Agreements Officer's decision that must be reviewed. Where SpaceX has completely failed to allege or demonstrate errors in the final agency action, *i.e.*, the AO decision, the Court should deny the MJAR in its entirety as failing to present any basis for relief.

### 3. The Court Should Reject SpaceX's New Objections For Which It Failed To Exhaust Its Mandatory Administrative Remedy.

SpaceX raises several new claim assertions for which a binding administrative resolution process and remedy was available, but SpaceX failed to exhaust such administrative remedies. As detailed above, the LSA RFP expressly requires objections to the Agency's evaluation or award of proposals to be made to the Agreements Officer, and states that "[f]ailure to comply with these directions is a basis for summary dismissal of the objection." LSA RFP Section 1.4, AR Tab 35 at 1068. When a contractor submits a proposal, it is obligated to act in accordance with what the solicitation requires. *See, e.g., Iron Bow Techs., LLC v. United States*, 133 Fed. Cl. 764, 782 (2017) (relying on the terms of the solicitation as controlling the protester-agency interactions in the context of the protester's complaint about the evaluation of its proposal). Long-standing federal procurement law requires that bidders comply with the terms of a solicitation; indeed, "[i]t is the plaintiff's compliance with the

15

1  solicitation that forms the consideration for the implied contract of fair dealing." *Eagle*
2  *Const. Corp. v. United States*, 4 Cl. Ct. 470, 476 (1984).  In regards to the ground rules,
3  SpaceX failed to raise any objection to the Objection Process mandated by Section 1.4
4  of the LSA RFP and is therefore bound by that provision.  *See Blue & Gold Fleet, L.P.*
5  *v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (holding that a party who fails to
6  object to the terms of a solicitation "prior to the close of the bidding process waives its
7  ability to raise the same objection afterwards" in a bid protest).  SpaceX's new claim
8  assertions did not comply with this requirement to present objections to the
9  Agreements Officer first, within the required time periods, as specified in RFP Section
10  1.4.

11       In Section IV.B of the MJAR, SpaceX raises new objections, not presented to the
12  AO as required, arguing that:  (1) ULA's proposal was incomplete; (2) the cost of
13  ███████████████████████████████████████████████████ were not
14  included in ULA's price proposal, and were not evaluated as added costs by the
15  Government; and, (3) the Agency did not equally assume the most expensive scenario
16  when evaluating costs for offerors other than SpaceX, including adding costs to other
17  offerors based on the possibility the Government would have to buy down risk for
18  Category A/B missions.  *See* MJAR [Dkt. No. 170] at 21-24.

19       SpaceX's failure to timely raise these new objections before the AO constitutes a
20  waiver of these assertions before this Court.  The Court should deny SpaceX's
21  objections that it raises only now, and which it failed to raise in the proper
22  administrative forum.  "[It is] the long settled rule of judicial administration that no one
23  is entitled to judicial relief for a supposed or threatened injury until the prescribed
24  administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*,
25  303 U.S. 41 (1938) (holding that employers challenging NLRB's jurisdiction must
26  fully utilize administrative proceedings prior to seeking judicial intervention).
27  Furthermore, "[e]xhaustion concerns apply with particular force when the action under
28  review involves exercise of the agency's discretionary power or when the agency

proceedings in question allow the agency to apply its special expertise." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (superseded by statute on unrelated grounds). Agency procurement officials, like the Agreements Officer, are permitted broad discretion. *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1381 (Fed. Cir. 2011) ("It is well settled that COs are given broad discretion in their evaluation of bids. When [a CO's] decision is reasonable, neither a court nor the GAO may substitute its judgement for that of the agency." (citations omitted)); s*ee R & W Flammann GmbH v. United States*, 339 F. 3d 1320, 1322 (Fed. Cir. 2003) ("[W]hen an officer[']s decision is reasonable a court may not substitute its judgment for that of the agency.").

The Supreme Court has held that "[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [Agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Commission of Territory of Alaska v. Aragon*, 329 U.S. 143 (1946). Moreover, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc*., 344 U.S. 33, 37 (1952); *see Reid v. Engen,* 765 F.2d 1457, 1460 (9th Cir. 1985); *see also Inter-Tribal Council v. Department of Labor,* 701 F.2d 770, 771 (9th Cir. 1983) (*per curiam*).  Arguments that plaintiff failed to raise at the agency level shall be considered waived unless exceptional circumstances exist. *Marathon Oil Co. v. United States*, 807 F.2d 759, 767–68 (9th Cir. 1986); *see also Duncanson-Harrelson Co. v. Director, Office of Worker's Compensation Programs*, 644 F.2d 827 (9th Cir. 1981) ("In the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding [in the Benefits Review Board] at the appropriate time."); *see also Barron v. Ashcroft*, 358 F.3d 674 (9th Cir. 2004); *see also Universal Health Services Inc. v.*

OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –

1    *Thompson*, 363 F.3d 1013 (9th Cir. 2004).    SpaceX has not demonstrated that

2    exceptional circumstances are present here.

3        Moreover, the objections raised by SpaceX mandatorily require the Agency's

4    expert evaluation of facts and exercise of discretion, which SpaceX failed to pursue.

5    Instead, SpaceX improperly asks this Court to make those determinations now.    *See*

6    *James v. U.S. Department of Health & Human Services*, 824 F.2d 1132, 1137 (D.C. Cir.

7    1987) ("where Congress has delegated certain initial decisions to the Executive

8    Branch, exhaustion of available administrative remedies is generally a prerequisite to

9    obtaining judicial relief for an actual or threatened injury").

10        SpaceX failed to exhaust its mandatory administrative remedies when it did not

11   timely raise these objections to the AO, as required.    Under the terms of the RFP, the

12   appeals process is mandatory, not optional.    Section 1.4 of the RFP requires offerors to

13   present any objections to the award decision or evaluation to the Agreements Officer

14   within 10 days of when the offeror knew or should have known the basis for its

15   objection, stating that "[f]ailure to comply with these directions is a basis for summary

16   dismissal of the objection."

17        Under the terms of the RFP, the Agreements Officer had both the power and

18   jurisdiction to adjudicate all objections presented by offerors.    That administrative

19   process could have provided the full relief SpaceX sought.    SpaceX presents this Court

20   with no reason why it did not timely raise these new objections through the proper

21   agency proceedings.    RFP Section 1.4 specified that objections that were not timely

22   raised were subject to summary dismissal.    As such, the Court should conclude that

23   SpaceX waived the arguments in MJAR Section IV.B described above by failing to

24   timely raise them with the Agency.    They should be summarily dismissed.

25   **B.    SpaceX Has Admitted That It Prepared And Submitted A "Poor"**
26   **Proposal.**

27        The Court may consider admissions of a plaintiff, even when the defendant has

28   asked the Court to resolve the matter "by review of the Administrative Record."    *See*

18

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gemmel v. Systemhouse, Inc.*, No. 04-189, 2009 WL 3157262, at *4, 7 (D. Ariz. Sept. 28, 2009) (considering admissions of plaintiff and determining to rule on the administrative record).   Official U.S. Government documents show that SpaceX CEO/CTO, Elon Musk, admitted to Acting Defense Secretary Patrick Shannahan in a December 6, 2018 meeting that his company, SpaceX, lost the LSA competition because it "had written a poor proposal that 'missed the mark,'" according to a record of that meeting contained in an official report of the DOD Inspector General ("DOD IG").   *See* Anthony Capaccio, *Musk to Pentagon:  SpaceX "Missed the Mark" on a Launch Bid*, Bloomberg (Apr. 27, 2019), https://www.bloomberg.com/news/articles/2019-04-27/musk-to-pentagon-spacex-missed-the-mark-on-a-launch-bid.   That admission—occurring <u>after</u> SpaceX received its debriefing and answers to its questions from the Agency—was expressly captured and memorialized in a DOD IG report, and SpaceX spokespersons have declined to comment on the Musk remarks.  *See id.*   Mr. Shanahan met with Mr. Musk for an hour and a member of Shanahan's staff attended and summarized the meeting in a Memorandum for the Record ("MFR").   According to the MFR, Mr. Musk noted that SpaceX was not successful in the Air Force competition for a launch service agreement contract and commented that SpaceX had written a poor proposal that "missed the mark."   *See* Inspector General, Department of Defense, *Report of Investigation:  Mr. Patrick M. Shanahan Acting Secretary of Defense*, United States Department of Defense (Apr. 25, 2019), at 26-27, https://media.defense.gov/2019/Apr/25/2002120583/-1/-1/1/DODIG-2019-082.PDF ("Mr. Musk also noted that SpaceX was not successful in the recent Air Force competition for a launch service contract and that SpaceX had written a poor proposal that 'missed the mark.'").   This document is admissible under Fed. R. Evid. 902(5) as an official publication issued by a public authority.  S*ee also* Sandra Erwin, *DOD IG: Air Force Secretary Questioned Ethics of Shanahan's 2018 Meeting with Elon Musk* (Apr. 25, 2019), https://spacenews.com/dod-ig-air-force-secretary-questioned-ethics-

of-shanahans-2018-meeting-with-elon-musk/.

The MFR provides a compelling admission[3] by the highest SpaceX official as to why it did not win an LSA award and that admission—SpaceX's view of the adequacy of the Agency action as shown in the Administrative Record—negates its claims here.

**C.    Even If The Court Looks Beyond SpaceX's Failure To Challenge The Final Agency Action, SpaceX's Motion Fails On The Merits.**

**1.    SpaceX's Motion Ignores the Considerable Discretion Afforded the Agency Here.**

In ignoring the Agency's final decision, SpaceX asks the Court to step into the Agency's shoes and reconsider the complex and highly technical evaluation decisions the Agency made when determining to cost share in the development of prototype launch systems.   It is a well-established and fundamental principle of Federal procurement law consistently recognized by the specialized government contract tribunals—the Court of Appeals for the Federal Circuit, the Court of Federal Claims, and the Government Accountability Office ("GAO")[4]—that the evaluation of proposals for their technical quality generally requires the special expertise of procurement officials.   Reviewing courts therefore give the greatest deference possible to these determinations.  *See E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (Protests concerning "the minutiae of the procurement process in such matters as technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."); *see also One Largo Metro, LLC v. United States*, 109

---

[3] *See* Fed. R. Evid. 801(d)(2).

[4] GAO's protest decisions, although not directly binding, are traditionally accorded significant weight and a high degree of deference by the courts.  *See NCR Corp. v. United States*, 915 F.2d 1584 (Fed. Cir. 1990) ("In view of the Comptroller General's long and extensive experience in the resolution of contested procurement decisions, his holdings are entitled to great deference.").  *See also Glenn Defense Marine (Asia) PTE Ltd. v. United States*, 97 Fed. Cl. 568, 577 n.17 (2011) (GAO decisions may be considered expert opinion); *Allied Tech. Grp., Inc. v. United States,* 649 F.3d 1320, 1331 n.1 (Fed. Cir. 2011) ("Though GAO opinions are not binding on this court, Congress has 'empowered [the Comptroller General] to determine whether the solicitation, proposed award, or award complies with statute and regulation,' *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (*citing* 31 U.S.C. § 3554(b)(1)), and this court may draw on GAO's opinions for its application of this expertise.").

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

Fed. Cl. 39, 74 (2013) (observing that "the evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials, and thus reviewing courts give the greatest deference possible to these determinations") (*quoting Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 395 (2005)).   GAO recognizes that a contracting agency has the discretion to determine its needs and the best method to accommodate them.  *See Gallup, Inc.*, B-410126, 2014 WL 4793047, at \*5 (Comp. Gen. Sep. 25, 2014); *PTSI Managed Services Inc.*, B-411412, 2015 WL 4606256 (Comp. Gen. Jul. 20, 2015) (The evaluation of proposals, including the determination of the relative merits of proposals, is primarily a matter within the agency's discretion because the agency is responsible for defining its needs and the best method of accommodating them.); *see Engility Corp.*, B-413120.3 *et al.*, 2017 WL 930351 (Comp. Gen. Feb. 14, 2017) ("The evaluation of proposals in a task order competition, including the determination of the relative merits of proposals, is primarily a matter within the contracting agency's discretion, because the agency is responsible for defining its needs and the best method of accommodating them.").   Additionally, an agency has substantially heightened discretion to define its requirements to achieve the highest possible effectiveness when the subject of the agency's acquisition relates to national defense or human safety, as is the case here.  *See Remote Diagnostic Techs*., *LLC*, B-413375.4, B-413375.5, 2017 WL 909056, at \*3-4 (Comp. Gen. Feb. 28, 2017); *see also Management and Technical Services Alliance Joint Venture*, B-416239, 2018 WL 3207404 (Comp. Gen. Jun. 25, 2018).  As discussed below, when considering the substance of SpaceX's proposal and the Agency's determinations, SpaceX's motion should be denied.

> ### 2.   SpaceX's Complaints Should Be Disregarded As Either Mere Disagreements Of Opinion, Or Untimely Challenges To The Ground Rules Of The Competition.

SpaceX makes repeated arguments that it was the "superior" offeror and the only one with "fully proven" and demonstrated ability to manufacture new orbital rockets.

*See* MJAR [Dkt. No. 170] at 2, 4, 5, 11, 12, 20, 24, 28.  Essentially, Space X argues that the LSA RFP should be rewritten to provide that only its "proven commercial launch system" should have received an award.  However, the time to challenge the LSA RFP terms has long passed and that argument is untimely.  LSA RFP Section 1.4 (Any objections to the terms of this solicitation . . . must be presented in writing to the Agreements Officer (AO), within ten calendar days of (1) the release of this solicitation.); *see Blue & Gold Fleet, L.P.* at 492 F.3d 1313 (holding that a party who fails to object to the terms of a solicitation "prior to the close of the bidding process waives its ability to raise the same objection afterwards" in a bid protest).  But SpaceX fundamentally misunderstands or mischaracterizes the Agency's purpose in structuring the LSA RFP and selecting the LSA awardees, and an offeror's disagreement with the Agency's judgment is insufficient to establish that the Agency acted unreasonably.  It is well established that "naked claims" of disagreement with evaluations, "no matter how vigorous, fall far short of meeting the heavy burden of demonstrating that the findings in question were the product of an irrational process and hence were arbitrary and capricious." *Banknote Corp. of Am. v. United States,* 56 Fed. Cl. 377, 384 (2003), *aff'd,* 365 F.3d 1345 (Fed. Cir. 2004); *see Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 384 (2017) (rejecting "plaintiff's bare assertion" that the agency's technical evaluation was irrational and constituted an effort to unfairly award the contract to another offeror).

The LSA RFP (Section 1.1) specified that the Agency's strategy was to develop commercial launch solutions in order to have at least two domestic, commercial launch service providers that also meet NSS Launch requirements, including the launch of the heaviest and most complex payloads.  AR Tab 35 at 1065-66.  The purpose of the LSAs  were to facilitate development of at least three Launch System prototypes as early as possible, allowing those launch systems to mature prior to a future selection of two NSS launch service providers for the Phase 2 Launch Service Procurements ("LSP"), starting in FY20.  The express goal of the LSA RFP was to implement public

**Opposition To SpaceX's Motion For Judgment On The Certified Administrative Record –**

private partnership agreements that partially fund industry's new and/or upgraded launch system solutions.  RFP Section 1.1.1.  *Id.*  These LSAs were intended to allow the Air Force to competitively procure launch services in the future from domestic commercial launch service providers that meet the National Security Space launch requirements.  The goal was to use innovative business arrangements that leverage industry's ongoing efforts to develop new and/or upgraded commercial launch systems. These public-private agreements will be tailored to each launch service provider's needs in order to enable commercial launch systems to meet all NSS requirements.  *Id.*

The LSA RFP described the LSA competition process, (RFP Section 1.2) noting that Other Transaction Authority would be used and that standard procurement rules such as the Federal Acquisition Regulation ("FAR") and FAR supplements did not apply, unless specifically addressed in the RFP.  AR Tab 35 at 1067.  The RFP stated that the Agency would award a maximum of one agreement for one EELV Launch System prototype per company and planned to award a portfolio of at least three agreements, but reserved the right to award any number of agreements, including none. RFP Section 1.3, AR Tab 35 at 1067; AR Tab 38 at 1263.  The actual number of awards was to be determined based on several factors including, but not limited to, the number and quality of proposals received, amount of funding requested by Offerors, and total amount of funding available.  AR Tab 35 at 1068.  Thus, while the Agency could have funded an LSA with SpaceX if it reasonably determined to do so based on evaluation of Agency needs, it was not required to do so.  Similarly, the elimination of another offeror does not ensure or mandate that SpaceX would receive an LSA award, unlike the situation in a typical procurement contract where the solicitation calls for one or more awards.

///

///

///

///

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

3.   **SpaceX Submitted A Poor Proposal Because It Failed To
Adequately Utilize Multiple Rounds Of Discussions And
Negotiation To Improve Its Proposal.**

The Air Force performed an extremely detailed evaluation process, consisting of four rounds of discussions, with each round resulting in Evaluation Notices ("ENs") (AR Tabs 64-99).  If an offeror's response to the EN did not satisfy the Government, that EN was resubmitted to the offeror.   Once the Air Force was satisfied with an offeror's response—which included narratives, revisions to proposals and the submission of requested documentation—the Air Force either closed the Evaluation Notice or noted that it was satisfied with the offeror's response.

The ENs for SpaceX in the Administrative Record show that the Agency's evaluation of SpaceX's proposal was fair, focused, well-reasoned, and complete.   In each EN, the Agency identified the topic covered by the EN and provided a narrative discussing why the topic is an issue and what the Agency needs to better understand about the system, component, design, plan, considerations, etc.   The Disposition section of the following ENs[5] establish that SpaceX, for reasons known solely to SpaceX, ███████████████████████████████████████████████ ███████████████████████████████████ which were identified by the Air Force in order for the Agency to better understand SpaceX's technical approach and the risk mitigation plans related thereto. ██████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████ After the evaluation dialogue concluded, there were final negotiations and final updated proposals.  *See* AR Tab 152 at 43101.  This provided

---

[5] The ENs identified are found in AR Tab 100 (180626 Offeror 8 ENs and Responses - Source Selection Tool Output), and each EN listed therein contains its history, except for the specific revisions to the offeror's proposal.  In addition, AR Tabs 97, 98 and 99 contain the ENs related to the other three offerors.  The Disposition section of the ENs is found on the last page of each EN.

24

**Opposition To SpaceX's Motion For Judgment On The Certified Administrative Record** –

SpaceX with yet another opportunity to address issues raised in the ENs.  SpaceX failed to fully utilize these opportunities to its advantage and submitted a poor proposal.

### 4.    SpaceX Failed To Address The Agency's Technical Concerns Resulting In Submission Of An Admittedly Poor Proposal.

In addition, SpaceX failed to fully address the Agency's technical concerns. Instead, SpaceX presented an overly-optimistic picture in its explanation of its solution/methodology for the Big Falcon Rocket ("BFR").  *See* ██████████ Section IV.C.3 above.  SpaceX failed to provide adequate documentation/support to address the Agency's concerns regarding the ████████████ issue, related to the ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.  *See* AR Tab 132 (LSA Final Evaluation document) at 41579, 41603–41604, 41608–41610.  Apparently, SpaceX considered, and still does consider, its approach to be the best for the Government, ██████████████████████████████████████████████ ████  It is a fundamental principle that, in responding to RFPs, an offeror bears the burden of submitting an adequately written proposal, and it runs the risk that its proposal will be evaluated unfavorably where it fails to do so.  *Structural Assocs., Inc./Comfort Sys. USA (Syracuse) Joint Venture v. United States*, 89 Fed. Cl. 735, 744 (2009) ("An offeror has the responsibility to submit a well-written proposal with adequately detailed information that allows for a meaningful review by the procuring agency.") (citation omitted); *see also KSC Boss Alliance, LLC*, 142 Fed. Cl. 368, 382 (2019) (holding that "it was [protester]'s responsibility to submit a well-written proposal that was responsive to the requirements of the Solicitation.").  Further, "all offerors, including incumbents, are expected to demonstrate their capabilities in their proposals." *Int'l Resource Recovery, Inc. v. United States*, 60 Fed. Cl. 1, 6 (2004); *see Distributed Solutions, Inc.*, B-416394, 2018 WL 3955502 (Comp. Gen. Aug. 13, 2018) (*citing, e.g., Tribalco, LLC*, B-414120, B-414120.2, 2017 WL 816542, at *5 (Comp.

**Opposition To SpaceX's Motion For Judgment On The Certified Administrative Record –**

Gen. Feb. 21, 2017)); *see also Microwave Monolithics, Inc.,* B-413088, 2016 WL 4259008 (Comp. Gen. Aug. 11, 2016) (it is the offeror's responsibility to submit a well-written proposal, with adequately detailed information which clearly demonstrates compliance with the solicitation and allows a meaningful review by the procuring agency). Where, ███ an offeror ignores the Agency's guidance and concerns, it bears the risk of an adverse agency evaluation, and that conduct does not make the agency's evaluation improper or unreasonable. *See KSC Boss Alliance, LLC*, 142 Fed. Cl. at 382 (2019) (finding protester's challenge to agency's evaluation lacked merit where protester failed to adequately address an important requirement in its proposal); *see also Battelle Memorial Inst.*, B-299533, 2007 WL 1428685, at *3 (Comp. Gen. May 14, 2007); *Great Lakes Towing Co. dba Great Lakes Shipyard*, B-408210, 2013 WL 3223422, at *7-8 (Comp. Gen. Jun. 26, 2013) (where a proposal omits, inadequately addresses, or fails to clearly convey requirements, the offeror runs the risk of an adverse agency evaluation).

Nevertheless, SpaceX's unilateral business decision to insist on proposing a ███████████████ and to limit the use of the ████████████ ███ was clearly premature and "risky" in light of the Agency's specifically expressed, and reasonable, position that SpaceX's approach presented significant risk factors, which were ████████████████████████ ████████████. *See* AR Tab 152 at 43100. SpaceX, in this instance, has fallen into the trap that incumbent contractors—and those that believe they know more than the Agency—do, writing a proposal without completely considering the Agency's needs and mission. *Structural Assocs., Inc./Comfort Sys. USA (Syracuse) Joint Venture*, 89 Fed. Cl. at 744 ("An offeror has the responsibility to submit a well-written proposal with adequately detailed information that allows for a meaningful review by the procuring agency."). Further, "all offerors, including incumbents, are expected to demonstrate their capabilities in their proposals." *Int'l Resource Recovery, Inc.*, 60 Fed. Cl. at 6; *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 597 (2006)

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

("Nor is it unreasonable for an agency to insist that the burden should fall on an offeror to prove to the agency's satisfaction that a proposed method of performance will, in fact, [work]."). Here, SpaceX's disagreement with the Agency's judgment does not establish that the Agency acted unreasonably or provide a basis to sustain its protest. *See Voith Hydro, Inc. v. United States*, 143 Fed. Cl. 201, 214 (2019) (finding plaintiff's argument that the agency failed to take into account a technical advantage of plaintiff's proposal constituted "mere disagreement with the agency's highly discretionary technical evaluation of proposals."); *see also Fort Carson Support Servs.*, 71 Fed. Cl. at 597 ("just because an agency disagrees with even a reasoned judgment of an offeror does not mean the agency is acting arbitrarily.").

### D. The Court Should Disregard SpaceX's Frequent and Unwarranted Attempts To Cite To And Argue From Materials Outside The Administrative Record.

SpaceX's attempts to go beyond the administrative record to support its position are not proper. The Court's review of the Agency's decision is confined to the administrative record. *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). SpaceX itself concedes that the Agency's actions must stand or fall on the bases provided by the Agency in the Administrative Record. *See* SpaceX Notice of Objection to Consultant Applications For Admission To The Protective Order [Dkt. No. 171] at 4-5. Record evidence is limited to the evidence that was before the agency at the time it made its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Camp v. Pitts,* 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review [in an APA suit] should be the administrative record already in existence, not some new record made initially in the reviewing court"). "Supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review" and therefore the Court must decide "whether supplementation of the record [is] necessary in order not to frustrate

1   effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374,

2   1380 (Fed. Cir. 2009) (quotations omitted).

3       In an effort to shore up its case, SpaceX's MJAR references commercial news

4   articles (MJAR at 18, 20), a GAO report (MJAR at 6, 7), DOD news articles (MJAR at

5   22), a Senate Committee hearing and report (MJAR at 7, 16, 20),[6] and, most

6   significantly, a wide ranging Declaration from ███████████ (████ Declaration),

7   SpaceX's █████████████████████████████████ (MJAR at 4, 6, 8, 9,

8   11, 12, 23, 25, 29, 30, 33, 34).   None of these sources were before the reviewing

9   agency nor were they considered in the LSA award determination.  *See* RFP Section 3,

10  AR Tab 35 at 1070 ("Offerors shall assume that the Government has no prior

11  knowledge of their capabilities and experience and will base its evaluation on the

12  information presented in the Offeror's proposal.").   As set forth in Blue Origin's

13  evidentiary objections filed concurrently herewith, the Court should reject such efforts

14  and evidence from outside the record.

15      SpaceX argues that declarations are permitted "for the limited purpose of

16  showing irreparable harm and competitive prejudice."   MJAR at 4, n.6.   The law

17  establishes that a review of the record is limited to what was before the Agency at the

18  time of the final agency decision.  *See Citizens to Preserve Overton Park, Inc.*, 401

---

[6] *See* MJAR at 18 (Sandra Erwin, ULA CEO Bruno: Launch industry challenged by tougher national security missions, SpaceNews (May 7, 2019), https://spacenews.com/ula-ceo-bruno-launch-industrychallenged-by-tougher-national-security-missions/) (Emre Kelly, Northrop Grumman is ready to 'start cutting metal' at KSC for new Omega rocket, Florida Today (Apr. 9, 2019), https://www.floridatoday.com/story/tech/science/space/2019/04/09/northrop-grumman-time-start-cutting-metal-ksc-new-omegarocket/3404407002/);  *see* MJAR at 20 (Sandra Erwin, Atlas 5 and Delta 4 launch delays caused by common component in upper stage, SpaceNews (July 17, 2019), https://spacenews.com/atlas-5-and-delta-4-launch-delayscaused-by-common-component-in-upper-stage/); *see* MJAR at 6, 7 (U.S. Gov't Accountability Office, GAO-14-259T, Evolved Expendable Launch Vehicle: Introducing Competition into National Security Space Launch Acquisitions (2014), https://www.gao.gov/assets/670/661337.pdf); *see* MJAR at 22 (DOD Contracts for September 27, 2017 (Sept. 27, 2017), https://www.defense.gov/Newsroom/Contracts/Contract/Article/1327363/) (DOD Contracts for September 27, 2018 (Sept. 27, 2018), https://dod.defense.gov/News/Contracts/Contract-View/Article/1647166/); *see* MJAR at 16 (S. Rep. No. 98-50 (1983), *reprinted in* 1984 U.S.C.C.A.N. 2174);  *see* MJAR at 7, 16, 20 (Hearing on Military Space Launch and the Use of Russian-Made Rocket Engines Before the S. Comm. on Armed Services, 114th Cong. (2016)).

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

U.S. at 420 (establishing that record evidence is limited to the evidence that was before the agency at the time it made its decision).   Moreover, notwithstanding SpaceX's statement, its citation to the ███ Declaration is not limited to those two issues.  *See* MJAR at 4, 8, 9, 11, 12, 23, 25, 29, 30, and 33.

Contrary to SpaceX's assertions, under Ninth Circuit precedent, the Court may only review evidence that was not considered by the Agency (*e.g.*, declarations) in limited circumstances.  The Court may review extra-record evidence only where:  (1) it is necessary to determine whether the Agency has considered all relevant factors and explained its decision; (2) the Agency has relied on documents not in the record; (3) supplementing the record is necessary to explain technical terms or complex subject matter; or (4) plaintiffs make a showing of bad faith.  *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009) (*citing Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).   These limited circumstances are "narrowly construed."  *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *accord Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) ("Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making.").   SpaceX fails to demonstrate that any of these circumstances are present in this case.

None of these limited exceptions apply here, and SpaceX has not shown otherwise.  The party seeking supplementation of the record bears the "heavy burden" of proving that the additional materials are necessary to adequately review the agency decision.  *Fence Creek Cattle Co.*, 602 F.3d at 1131.  *Cf. Parravano v. Babbitt*, 837 F. Supp. 1034, 1039 (N.D. Cal. 1993), *aff'd*, 70 F.3d 539 (9th Cir. 1995) ("It is the plaintiffs' burden to demonstrate that one or more of [the] exceptions apply.").  SpaceX has wholly failed to carry its burden to show that such extra-record materials are necessary to permit adequate review of the Agency decision.  As such, all extra-record

1   information used by SpaceX, including the ▓▓▓▓ Declaration, should be disregarded

2   by the Court.

3   　　　　Furthermore, even assuming the ▓▓▓▓ Declaration were permitted for the

4   limited purpose of demonstrating irreparable harm, SpaceX abuses this limited purpose

5   by contaminating the ▓▓▓▓ Declaration with additional extra-record information.

6   SpaceX uses the ▓▓▓▓ Declaration to bolster many other arguments made throughout

7   its Motion.  Out of the seven-page Declaration, five pages are used to discuss out-of-

8   scope topics, such as: (a) "SpaceX And Its Key Accomplishments" ( Dkt. No. 170-1

9   (▓▓▓▓ Declaration, Exhibit A to MJAR) 170-1 at 5-7); (b) ▓▓▓▓▓▓ personal

10  analysis on the "Air Force Plan To End Reliance On Russian Engines, To Create

11  Sustainable Competition And Maintain Assured Access to Space" (*Id.* at 7-8); (c) non-

12  relevant information regarding the "LSA Competition And SpaceX Proposal" (*Id.* at 8-

13  9);   and, (d) ▓▓▓▓▓▓ legal conclusions (in his capacity as ▓▓▓▓▓▓

14  ▓▓▓▓▓▓ ) on the "Errors In The Evaluation" (*Id.* at 9-13).  For additional grounds of

15  objections, see Intervenor Blue Origin's Evidentiary Objections filed concurrently with

16  this Opposition.  Not only is the information cited above repetitive and immaterial to

17  review of the Agency's Administrative Record, it is entirely irrelevant to the issue of

18  irreparable harms.  SpaceX merely uses the ▓▓▓▓ Declaration as a vehicle to provide

19  support where the record otherwise offers none. *See* citations to the ▓▓▓▓ Declaration

20  in the MJAR at 8, 9, 11, 23, 25, 30, and 33.

21  　　　　None of the extra-record sources cited above was before the Agency at the time

22  of its decision.  None of these documents are necessary for this Court to effectively

23  review the Agency's decision.  None of these documents are appropriate for this Court

24  to consider in connection with its review of the Agency's final decision or award

25  decisions.  SpaceX has failed to demonstrate that the proffered extra-record evidence

26  meets any exceptional circumstance warranting consideration of supplemental

27  information.  The Court should reject all extra-record evidence SpaceX has attempted

28  to include.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

30
OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**E.    In No Event Is SpaceX Entitled To A Directed LSA Award Or Permanent Injunctive Relief.**

Even if the Agency's evaluation were in some way flawed (which it is not), in no event is SpaceX entitled to a directed LSA award or permanent injunctive relief.

**1.    SpaceX Is Not Entitled To A Directed Award.**

If, *arguendo*, the court were to determine that the Agency's action was improper based on review of the record, the appropriate procedure is to remand to the Agency for further proceedings. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also SEC v. Chenery*, 318 U.S. 80 (1943); *see Alpha Painting & Constr. Co. Inc. v. Delaware River Port Auth. of Pennsylvania & New Jersey*, 853 F.3d 671 (3d Cir. 2017), *as amended* (Apr. 26, 2017) (holding the district court abused its discretion by issuing a permanent injunction and directed award when more limited injunction was appropriate); *see also Delta Data Sys. Corp. v. Webster*, 744 F.2d 197 (D.C. Cir. 1984) (finding that although the agency's decision was arbitrary and irrational, the district court exceeded its authority in issuing a directed award).

A district court's review of an agency's procurement decision "is extremely limited in scope" and the "district court is not to substitute its judgment for the agency's, but may only act when an agency's decision is found to be irrational". *Princeton Combustion Research Labs., Inc. v. McCarthy*, 674 F.2d 1016, 1021 (3d Cir. 1982).   Even where the district court determines the agency's decision lacks any reasonable basis, "it does not automatically follow that plaintiff is entitled to injunctive relief." *Id.*  Moreover, district courts should not direct an agency to award a contract to a specific bidder "unless it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Alpha Painting & Constr. Co. Inc. v. Delaware River Port Auth. of Pennsylvania & New Jersey,* 853 F.3d 671, 689 (3d Cir. 2017), *as amended* (Apr. 26, 2017) (quoting *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 204 (D.C. Cir. 1984)); *cf. Choctaw Mfg. Co. v. United States*, 761 F.2d 609, 620 (11th Cir. 1985).   Where "[t]here is

31

1    nothing in the record to guarantee that [the plaintiff] would have received the . . .
2    contracts had it received the notice to which it was entitled [, t]here are . . . no grounds
3    . . . to vacate the awards of those contracts to other contractors and grant them to [the
4    plaintiff]." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 204 (D.C. Cir. 1984)
5    (quoting *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 969
6    (D.C. Cir. 1980) (internal citations omitted).

7            A directed award is improper here because the record does not indicate that
8    SpaceX would have received an award but for any illegal Agency action.  Even if the
9    Agency's evaluation was improper, the RFP provided the Agency with the discretion to
10   not award an agreement to any offeror.  *See* LSA RFP Section 1.3; AR Tab 35 at 1068.
11   Alternatively, given that SpaceX's proposal ██████████ was ████████
12   ████████ as Blue Origin's proposal ($████████), the Agency could have reasonably
13   chosen to make only one award to Blue Origin.  AR Tab 136 at 41752.  SpaceX fails to
14   demonstrate that but for an improper Agency decision it would have been awarded an
15   LSA agreement.

16           Furthermore, SpaceX's request for a directed award relies on a superficial
17   reading of *Choctaw Manufacturing Co. v. United States*, 761 F.2d 609, 619 (11th Cir.
18   1985).   In *Choctaw Manufacturing*, the Agency committed a clear unmistakable
19   violation of law, an award was required to be made, and there was an undisputed
20   offeror that would have won award but for the Agency's illegal decision.  That is not
21   the case here.   The Agency has not violated any law or regulation, no award was
22   required to be made, and there is no undisputed second-place offeror; thus, the Court
23   should reject SpaceX's request for a directed award.

24           **2.      SpaceX Is Not Entitled To Injunctive Relief.**

25           SpaceX asks the Court to either award SpaceX an LSA award or permanently
26   enjoin further investment under the LSAs and any further performance by the
27   awardees.  MJAR at 4.  SpaceX is not entitled to a permanent injunction because its
28   case fails on the merits.  However, even if the Agency's decision were in some way

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

flawed, such injunctive relief would not be appropriate because: (1) SpaceX will not suffer additional irreparable harm; and, (2) SpaceX fails to explain why other remedies available at law, including money damages, would not constitute adequate compensation; (3) SpaceX fails to consider the balance of hardships between SpaceX and the Agency; and (4) the public interest would be greatly disserved by a permanent injunction.

To receive a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;[7] (4) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (5) that the public interest would not be disserved by a permanent injunction. *See Sierra Forest Legacy v. Sherman,* 646 F.3d 1161, 1184 (9th Cir. 2011) (per curiam) (*quoting eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).

The harm SpaceX complains of has already occurred and cannot be undone. SpaceX alleges that it will suffer irreparable harm: (1) because the awardees will gain a competitive advantage through LSA funding and technical insights from working with the Agency on the LSAs; and, (2) this disadvantage will damage SpaceX's ability to compete in the Phase 2 Competition and future Air Force launch services procurements. MJAR at 34. Unfortunately, these purported harms have already occurred and cannot be undone, particularly in regards to the Phase 2 LSP competition. All competitors, including SpaceX, have already submitted proposals for the Phase 2 LSP competition. Since awards were made in October 2018, the LSA awardees have been receiving funding and working with the Agency on their respective launch systems, so any advantage for competitors and disadvantage for SpaceX regarding the

---

[7] SpaceX inaccurately cites *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013), and fails to include the second requirement for injunctive relief – that remedies available at law are inadequate to compensate for the injury. *See* MJAR at 16.

**OPPOSITION TO SPACEX'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD –**

Phase 2 LSP competition has already been cemented.  In short, the LSA train has left the station.  *See Matter of Blue Origin Florida*, *LLC*, B-417839.1, 2019 WL 6250708 (Comp. Gen. Nov. 18, 2019).

Furthermore, LSP contracts are anticipated to be awarded no later than 2020. LSA RFP; AR Tab 35 at 1066.  An LSA awardee that does not win an LSP award will have its LSA award terminated.  AR Tab 35 at 1066.  Thus, even if SpaceX were to receive an LSA award through a reevaluation process but does not subsequently win an LSP award, the LSA award will have little or no benefit to SpaceX.

Regardless, harm to SpaceX is far outweighed by the public interest greatly disserved by a permanent injunction.  Courts have found that "[j]udicial intrusion into government purchases necessarily delays completion of the contract and increases costs, with little measurable benefit to the public." *Allis-Chalmers Corp., Hydro-Turbine Div. v. Friedkin*, 635 F.2d 248, 252-53 (3d Cir. 1980).  When evaluating the public interest in a Government procurement context, courts have identified three factors to be considered:  (1) the practical considerations of efficient procurement of supplies for continuing government operation; (2) the public interest in avoiding excessive costs; and (3) the bidder's entitlement to fair treatment through agency adherence to statutes and regulations.  *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 434 (3d Cir. 1979); *Alpha Painting & Constr. Co. Inc. v. Delaware River Port Auth. of Pennsylvania & New Jersey*, 853 F.3d 671, 688–89 (3d Cir. 2017), *as amended* (Apr. 26, 2017).  Here, SpaceX asks the Court to terminate the LSA awards after the Government has already expended hundreds of millions of dollars developing the awardees' space launch prototypes.  Additionally, SpaceX demands a directed LSA award worth, at the very least, hundreds of millions of dollars[8] that will provide no benefit to the Government in the Phase 2 LSP competition, which was the ultimate purpose of the LSA awards.  SpaceX fails to explain how either outcome benefits the

---

[8] SpaceX's final revised proposal sought a Government investment of $██████.  AR Tab 123 at 39868.

34

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

public, or how the interest in ensuring proper agency conduct outweighs these enormous public costs.

Moreover, even if the Agency decision is irrational or illegal (which it is not), "prudent judicial discretion may still refuse declaratory or injunctive relief because of overriding public interests." *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 434 (3d Cir. 1979). This may be particularly true in the case of a procurement for National Security Space Launch services "where long and complex factual histories, subtle economic factors, and the need for expeditious buying decisions require assessments better left to the expertise of an executive agency...." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 203 (D.C. Cir. 1984) (quoting *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1271 (5th Cir. 1978) (internal quotation and citation omitted).

SpaceX's case fails on the merits. However, even if there were any flaw in the Agency's decision, the balance of public versus private interests heavily weighs against granting the requested permanent injunction. The Court should reject SpaceX's demands for injunctive relief and directed award.

## IV. CONCLUSION

For the reasons set forth above, the Court should deny the MJAR and grant judgment for the Defendant and Defendant-Intervenors.

Respectfully submitted,

**BARNES & THORNBURG LLP**

Dated: January 17, 2020            By: s/Scott E. Pickens
                                       Scott E. Pickens
                                       Scott.Pickens@btlaw.com
                                       Scott N. Godes
                                       Scott.Godes@btlaw.com
                                       Michael A. Hordell
                                       Michael.Hordell@btlaw.com
                                       Matthew B. O'Hanlon
                                       matthew.ohanlon@btlaw.com
                                       Matthew J. Michaels
                                       MMichaels@btlaw.com
                                       Attorneys for Defendant-Intervenor Blue
                                       Origin, LLC

1

**PROOF OF SERVICE**

2 I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2029 Century Park East,
3 Suite 300, Los Angeles, CA 90067.

4 On January 17, 2020, I served the foregoing document(s):

5 **DEFENDANT-INTERVENOR BLUE ORIGIN, LLC'S OPPOSITION TO PLAINTIFF SPACE EXPLORATION TECHNOLOGIES CORP.'S MOTION**
6 **FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD**

7 on the interested parties in this action as follows:

8 Craig A. Holman                          Kevin P. Mullen
9 craig.holman@arnoldporter.com            KMullen@mofo.com
   Arnold & Porter Kaye Scholer LLP         Morrison and Foerster LLP
10 601 Massachusetts Ave., N.W.             2000 Pennsylvania Avenue, N.W., Suite
11 Washington, D.C. 20001                   6000
   Telephone: 202.942.5000                  Washington, D.C. 20006
12 Facsimile: 202.942.5999                  Tel: 202-887-1500
13 *Counsel for Plaintiff*                  Fax: 202-887-0763
   *Space Exploration Technologies Corp.*   *Counsel for Orbital Sciences Corporation*
14

15 Joseph Evan Borson                       Todd R. Steggerda
16 joseph.borson@usdoj.gov                  tsteggerda@mcguirewoods.com
   U.S. Department of Justice               McGuireWoods LLP
17 Federal Programs Branch - Civil          2001 K Street, N.W., Suite 400
   Division                                 Washington, D.C. 20006
18 1100 L Street, N.W.                      Tel: 202-857-2477
19 Washington, D.C. 20005                   Fax: 202-828-2968
   Tel: 202-514-1944                        *Counsel for United Launch Services, LLC*
20 Fax: 202-616-8460

21 *Counsel for United States of America*
   ☒     **BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION:**  Based
22        on an agreement of the parties to serve copies of documents by e-mail or
         electronic transmission, I caused the document(s) to be sent to the respective e-
23        mail address(es) of the party(ies) as stated above.

24 ☒     **FEDERAL**:  I declare under penalty of perjury that the foregoing is true and
         correct.
25
26 Executed on January 17, 2020, at Los Angeles, California.

27                                          /s/ Matthew B. O'Hanlon
                                            Matthew B. O'Hanlon
28