Joseph E. Borson (Va. Bar No. 85519)
joseph.borson@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: 202-514-1944
Fax: 202-616-8460
*Counsel for the United States of America*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Space Exploration Technologies, Corp., <br><br> Plaintiff, <br><br> v. <br><br> United States of America, <br><br> Defendant, <br><br> v. <br><br> Blue Origin, LLC *et al.*,, <br><br> Defendant-Intervenors. | Case No. 2:19-cv-7927-ODW(GJS) <br> Honorable Otis D. Wright II <br> United States District Judge <br><br> ▓▓▓▓▓▓ **SURREPLY IN** ▓▓▓▓**TION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE CERTIFIED ADMINISTRATIVE RECORD** <br><br> Date: March 2, 2020 <br> Time: 1:30PM <br> Ctrm: 5D, 5th Floor <br> First Street Courthouse <br> 350 W. First Street <br> Los Angeles, CA 90012 |

**FILED** ▓▓▓▓▓▓ **PURUSANT TO ORDER OF THE COURT DATED**

**NOVEMBER 21, 2019 AND ECF NO. 16.**

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

I. THE AIR FORCE ACTED CONSISTENTLY WITH THE RFP AND CONGRESSIONAL DIRECTION. ............................................................1

   A. SpaceX Failed to Exhaust Its Belated Challenges to the RFP Terms............1

   B. The LSA Awards Satisfy the 2018 NDAA. ...................................................3

   C. The Air Force Did Not Risk Assured Access to Space..................................5

   D. The Air Force's Decision is Consistent with Congressional Direction to End Reliance on Russian Rocket Engines for NSS Missions...................6

II. THE AIR FORCE'S RISK ASSESSMENTS WERE REASONABLE.........6

   A. The Air Force Properly Considered Category A/B Mission Risks................6

   B. The Air Force Properly Evaluated SpaceX's Risk.........................................8

   C. The Air Force Reasonably Evaluated SpaceX's Schedule Risk. ...................9

III. THE AIR FORCE'S COST ASSESSMENTS WERE REASONABLE..................................................................................................11

   A. The Air Force's Cost Evaluation Did Not Arbitrarily Favor ULA..............11

     1. ███████████████████ ........................................................12

     2. ████████ Components ...................................................12

     3. BE-4 Development .................................................................13

   B. The Air Force's Treatment of SpaceX's Costs Was Reasonable. ...............14

IV. SPACEX IS NOT ENTITLED TO INJUNCTIVE RELIEF. .....................15

CONCLUSION...................................................................................................15

- i -

# TABLE OF AUTHORITIES

**CASES**

*AquAlliance v. U.S. Bureau of Reclamation,*
  312 F. Supp. 3d 878 (E.D. Cal. 2018) .................................................. 15

*Blue & Gold Fleet, L.P. v. United States,*
  492 F.3d 1308 (Fed. Cir. 2007) ............................................................ 2

*Darby v. Cisnero,*
  509 U.S. 137 (1993) ............................................................................ 2

*Davis v. Mich. Dep't of Treasury,*
  489 U.S. 803 (1989) ........................................................................ 3, 4

*Dep't of Commerce v. New York,*
  139 S. Ct. 2551 (2019) ......................................................................... 6

*Glenn Def. Marine (Asia), PTE Ltd. v. United States,*
  105 Fed. Cl. 541 (2012) ....................................................................... 8

*In re Penrod,*
  392 B.R. 835 (B.A.P. 9th Cir. 2008),
  aff'd and remanded, 611 F.3d 1158 (9th Cir. 2010) ........................... 3

*Klamath-Siskiyou Wildlands Ctr. v. NOAA. Nat'l Fisheries Serv.,*
  109 F. Supp. 3d 1238 (N.D. Cal. 2015) ............................................. 15

*Nat'l Mall Tours of Wash., Inc. v. U.S. Dep't of the Interior,*
  No. CV 15-0529 (ABJ), 2016 WL 8711706 (D.D.C. Mar. 18, 2016),
  aff'd in part, vacated in part on other grounds, 862 F.3d 35 (D.C. Cir. 2017) ........ 2

*Russello v. United States,*
  464 U.S. 16 (1983) ............................................................................... 7

*S. Cal. Alliance of Publicly Owned Treatment Works v. U.S. EPA,*
  297 F. Supp. 3d 1060 (E.D. Cal. 2018) ........................................... 7, 8

*San Luis & Delta-Mendota Water Auth. v. Locke*,
 776 F.3d 971 (9th Cir. 2014) ............................................................................. 5, 11

*United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*,
 288 F. Supp. 3d 99 (D.D.C. 2017) ........................................................................ 3

**STATUTES**

10 U.S.C. § 2273 ............................................................................................................. 5

51 U.S.C. § 50101 ........................................................................................................... 3

51 U.S.C. § 50131 ........................................................................................................... 3

2018 NDAA § 1605,
 Pub. L. No. 115-81, 131 Stat. 1283 (2017) ........................................................ 3, 4

Case 2:19-cv-07927-ODW-GJS Document 96 Filed 02/27/20 Page 5 of 20 Page ID #:2933
Case 2:19-cv-07927-ODW-GJS Document 68 (Ex Parte) Filed 02/10/20 Page 5 of 28
Page ID #:2128

# INTRODUCTION

The Air Force awarded three Launch Service Agreements ("LSAs") to help develop the next generation of vehicles to launch critical National Security Space ("NSS") payloads. In doing so, the Air Force made a number of technical judgments and risk assessments that are entitled to significant deference. SpaceX has not shown in its reply, just as it did not show in its opening brief, that the Air Force's judgments were arbitrary or capricious.

In its Reply, SpaceX continues to argue that the Air Force failed to comply with the LSA Request for Proposal ("RFP") and governing statutes. But SpaceX ignores or misrepresents the plain text of these authorities, which make clear that the Air Force acted properly. The Air Force also appropriately judged the risks inherent in each proposed approach. SpaceX doubles-down on its claim that the Air Force applied an unstated "backup plan" to "buy-down" its competitors risks; but the record makes clear that this criteria was not the basis for the agency's final decision. And SpaceX's attempts to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ whither in the face of the Air Force's reasonable technical conclusions, which SpaceX does not seriously challenge on Reply. Finally, the Air Force's cost evaluations were appropriate and supported by the RFP. Accordingly, the Air Force's decision should be affirmed.

## I. THE AIR FORCE ACTED CONSISTENTLY WITH THE RFP AND CONGRESSIONAL DIRECTION.

### A. SpaceX Failed to Exhaust Its Belated Challenges to the RFP Terms.

Many of SpaceX's arguments are repackaged disagreements with the *terms* of the LSA RFP, rather than disagreements with the agency's application thereof. *See, e.g.*, Reply at 7-8 (definition of "commercial," lack of a "purpose-built" requirement); *id.* at 9 (lack of a specific "common component" factor in RFP); *id.* at 13-15 (definition of "parallel research or investment" cost criteria); *id.* at 16 (RFP double-counting procedure); *id.* at 16 (requirement that costs included with respect to

- 1 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

statement of work be included in proposal); *id.* at 17-18 (requirement of vertical integration at both coasts). While these complaints fail on the merits, *see infra*, they also fail because SpaceX failed to timely challenge the terms of the RFP.

The RFP requires that: "[a]ny objections to the terms of this solicitation, evaluation of proposals, or award of agreements must be presented in writing . . . within ten calendar days of . . . the release of this solicitation. . . . *Failure to comply with these directions is a basis for summary dismissal of the objection.*" Tab 38, 1263 (emphasis added). Despite informally commenting on other aspects of the RFP, *see, e.g.*, Tab 20c.1, Tab 28a, Tab 40, SpaceX did not raise these objections to the RFP within the timeframe specified, so its belated objections should be dismissed.

This concern is acute in government procurements. "Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive [an] award and then, if unsuccessful, claim the solicitation was infirm." *Blue & Gold Fleet, L.P. v. United* States, 492 F.3d 1308, 1314 (Fed. Cir. 2007). Federal district courts have also applied this principle to APA actions challenging procurements. *See, e.g., Nat'l Mall Tours of Wash., Inc. v. U.S. Dep't of the Interior*, No. CV 15-0529 (ABJ), 2016 WL 8711706, at *16 (D.D.C. Mar. 18, 2016), *aff'd in part, vacated in part on other grounds*, 862 F.3d 35 (D.C. Cir. 2017).

Although SpaceX says it "seeks to enforce – not object – to the RFP," Reply at 1, its objections are to the RFP's underlying terms. Nevertheless, SpaceX argues that the Supreme Court's decision in *Darby v. Cisnero*, 509 U.S. 137 (1993), precludes the application of the RFP's objection clause. Reply at 1, 5-6. But this doctrine prohibits *judicially created* exhaustion requirements, not exhaustion requirements "provided by Congress *or the agency*." *Darby*, 509 U.S. at 147 (emphasis added). Here, the Air Force provided an exhaustion requirement via the RFP's explicit text, Tab 38, 1263, so *Darby* does not save SpaceX's untimely attacks on the RFP's terms.

- 2 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

**B. The LSA Awards Satisfy the 2018 NDAA.**

The 2018 NDAA requires that the Secretary of Defense "develop capabilities necessary to enable existing or planned commercially available space launch vehicles or infrastructure that are primarily for national security space missions." 2018 NDAA § 1605(a)(1)(C), Pub. L. No. 115-81, 131 Stat. 1283 (2017). The RFP effectuates that mandate by requiring offerors to demonstrate "how the proposed Government cost share will only be used to develop capabilities necessary to enable existing or planned commercially available space launch vehicles or infrastructure that are primarily for national security space missions." Tab 38, 1274. SpaceX still quibbles with the Air Force's implementation of this requirement, but none of its objections pass muster.

The Air Force reasonably determined each offeror was a "commercial" launch service provider. SpaceX continues to object to defining "commercially available space launch vehicles" to include launch vehicles sold by commercial companies, although it did not raise any objection related to the term in the RFP, nor did it suggest a different approach. Reply at 7. A "commercial provider," in the context of the government procurement of space launches, is a term of art that refers to launch providers not controlled by the government, a criterion ULA, Blue Origin, and Orbital indisputably satisfy. *See* Def.'s Br. at 36 (citing 51 U.S.C. §§ 50101(1), 50131). SpaceX argues that Congress did not intend to incorporate those definitions into the 2018 NDAA because it did not do so explicitly. *See* Reply at 7-8. But "there is no rule of construction suggesting that, absent a cross-reference, statutes with similar language must be interpreted differently." *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 144 n.6 (D.D.C. 2017). Rather, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *In re Penrod*, 392 B.R. 835, 856 (B.A.P. 9th Cir. 2008), *aff'd and remanded*, 611 F.3d 1158 (9th Cir. 2010) (quoting *Davis v. Mich. Dep't of*

- 3 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

*Treasury*, 489 U.S. 803, 809 (1989)). The Air Force reasonably adopted a definition for "commercial" that accords with the requirements for the procurement of commercial space launch services in Title 51, Chapter 501, which applies to government space launches. *See* 51 U.S.C. § 50131. Moreover, the Air Force determined that each of the planned vehicles would be commercially available, something to which SpaceX offers no response.[1]

Indeed, SpaceX inexplicably fails to offer a competing definition of "commercially available space launch vehicles," other than, perhaps "operational, domestically-produced rockets." *See* Reply at 7-8. But that definition is *precluded* by the 2018 NDAA, which covers "existing or *planned* [i.e., not currently operational] commercially available space launch vehicles." 2018 NDAA § 1605(a)(1)(C) (emphasis added). Nor did SpaceX object to the RFP, which specifically stated that LSAs were to support "new and/or upgraded launch system solutions." Tab 38, 1260. And, of course, its own BFR is not currently operational. *See, e.g.*, Tab 123, 39754.

SpaceX also twists the requirement that LSA funds be used to develop capabilities necessary to enable existing or planned commercially available vehicles or infrastructure that are "primarily for national security space missions," 2018 NDAA § 1605(a)(1)(C), into a prohibition against vehicles that are "purpose-built" for NSS requirements. *See* Reply at 8. SpaceX brandishes the term "purpose-built [for NSS missions]" as a cudgel, claiming that such vehicles (whatever they are) cannot satisfy the RFP or NDAA. *See id.* But "purpose-built" has no statutory or RFP definition; indeed, SpaceX does not contend that this term appears anywhere in

---

[1] The Air Force specifically considered whether the planned space launch vehicles would be "commercially available" under RFP sections 3.1.4.3 and 3.1.6.4, *see, e.g.*, Tab 128, 41303; Tab 129, 41333; Tab 130, 41359-41360, and concluded that each awardee would fit within the definition of a commercial space launch provider, certified that its vehicle(s) would be commercially available, and had provided a business case that was based in part on commercial sales. *See, e.g.*, Tab 120, 35232 (ULA providing projected commercial pricing); Tab 121, 36813, 36921 (Blue Origin providing commercial pricing and tailoring design to meet commercial requirements); Tab 122, 37044-45 (Orbital providing commercial pricing and predicated commercial flight rates).

- 4 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

the record. Rather, the RFP and NDAA (and the Air Force planning documents that SpaceX cites, *see id.*), simply state that LSA vehicles should not *exclusively* serve NSS missions. *See, e.g.*, Tab 46, 1343. The Air Force determined the successful entrants would all support commercial, non-NSS missions, *see* Def.'s Br. at 36-37, a conclusion SpaceX does not challenge in its reply.

**C. The Air Force Did Not Risk Assured Access to Space.**

SpaceX continues to claim that the Air Force risked violating the assured access to space policy set out in 10 U.S.C. § 2273 because it "invested only in solutions that risked the Category A/B timeline and excluded the one competitor that posed no risk to those, most-urgent requirements." Reply at 9. This proposition is doubly wrong. First, contrary to SpaceX's claim, the Air Force did not find that SpaceX's Category A/B missions presented ▮▮▮▮ rather, it assigned ▮▮▮▮ SpaceX's ▮▮▮▮▮▮▮▮. *See* Def.'s Br. at 14. Second, the RFP did not designate any schedule requirements as "the most urgent" – rather, it judged schedule risk with respect to all these missions collectively, *see* Tab 38, 1269-74, and the agency considered those risks and selected the portfolio most advantageous to meeting the NSS timelines and satisfying the assured access to space policy. *See* Tab 136, 41753.

SpaceX also returns to its argument that the use of common components inherently risked assured access to space. Reply at 9; *see also* Def.'s Br. at 39-40. SpaceX asserts that the Air Force acknowledged this risk but dismissed it by omitting an RFP evaluation criteria related to common components. Reply at 9. That is wrong. The Air Force both specifically addressed the common component concern and determined it did not constitute a risk, and also separately evaluated common components, like the BE-4 engine, for risk based on technical criteria, and considered the risks to be mitigated. *See* Def.'s Br. at 40-41; *see also* Tab 136, 41753. This technical judgment is entitled to significant deference. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) ("Th[e] traditional

- 5 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

deference to the agency is at its highest where a court is reviewing an agency action that required a high level of technical expertise.").

### D. The Air Force's Decision is Consistent with Congressional Direction to End Reliance on Russian Rocket Engines for NSS Missions.

Finally, SpaceX claims that the LSA decision "ensures" continued reliance on Russian rocket engines for NSS missions. Reply at 10. But, again, this is not true – the Air Force specifically concluded that the awardees would meet the Category A/B mission requirements with acceptable risk by April 1, 2022 (well in advance of the Congressionally-mandated December 31, 2022 deadline to cease additional procurement of launch services utilizing Russian engines). *See* Def.'s Br. at 41-43.

## II. THE AIR FORCE'S RISK ASSESSMENTS WERE REASONABLE.

### A. The Air Force Properly Considered Category A/B Mission Risks

SpaceX initially argued that the Air Force misjudged its competitors' Category A/B mission risks because those competitors failed to hue to a 14-month timeline between the final certification flight and the launch vehicle initial capability date. *See* Pl.'s Br. at 25-28; Def.'s Br. at 11-14. But in Reply, SpaceX focuses on its claim that the Air Force "crafted an undisclosed backup plan" to "buy down" Category A/B risk because it could procure existing Falcon or Atlas vehicles to launch those national security payloads. *See* Reply at 10-13. There is no record support for that conclusion.

An agency is required to "disclose the basis" of its action, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019), and here the Air Force did so through the written evaluation decisions which constituted the final agency action. Neither these final evaluation documents prepared by program staff, nor the final decisional document, mention or rely on any such "backup plan." *See* Def.'s Br. at 15.

SpaceX admits that the final evaluation did not mention a backup plan, but, undaunted, claims that the "improper backup plan evaluation" was incorporated into the final decision. Reply at 12. There is no basis for that assertion – the final decision

- 6 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

relied on the final "assessments and recommendations" of the evaluation team; none of which mentioned any such "backup plan" or "buy-down." Tab 136, 41745-46.

Even though procuring launches on existing vehicles as a "backup plan" was considered as a risk mitigation factor earlier in the evaluative process, it was rejected before the agency decision was finalized. On June 26, 2018, the Agreements Officer prepared an *interim* evaluation document, of the *initial* proposals, where he suggested that the Air Force might have to minimize Category A/B risk by using existing Falcon or Atlas vehicles in the event of a delay to *SpaceX* or other companies. *See* Tab 104, 31219-20, 31119. The conversations SpaceX highlights as the basis for such a "backup plan" occurred in July 2018, *see* Tab 101, at the beginning of negotiations, and were based on interim ratings and initial proposals, *see, e.g.*, Tab 128, 41298.

But this consideration *did not carry through to the final evaluation*, which was based on a separate evaluation of separate proposals. *See* Tab 132. The request for the final proposal updates was not sent until mid-September 2018. *See* Tabs 119a-d. It is the resultant *final* proposals that formed the basis of the *final* evaluations, ratings and the award decision. *See, e.g.*, Tab 119d, 35178 ("The Government will evaluate your final updated proposal for compliance with the LSA RFP, and against the criteria in the LSA RFP, in determining your overall final ratings and for portfolio selection."). And that final award decision did not include any discussion of a "backup plan" or "buying down" the risk, nor does SpaceX show that factor was considered in the final decision.

When a drafter initially includes a criteria in a draft document, but deletes it in the final document, it is presumed that the deletion strikes that criteria in the final version. *See, e.g., Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended."); *see also S. Cal. Alliance of Publicly Owned Treatment Works v. U.S. EPA*, 297 F. Supp. 3d 1060,

- 7 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

1073 (draft documents are by definition not final agency action); *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 569 (2012) ("Agency evaluators must be allowed the discretion to review their own conclusions if they conclude a mistake has been made, or if further inquiry appears appropriate, provided the re-evaluation conforms with the solicitation, . . . and the evaluation process is conducted in a manner fair to all offerors."). So too here.

**B. The Air Force Properly Evaluated SpaceX's Risk.**

SpaceX's Category ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Def.'s Br. at 17-18. SpaceX claims in reply that it is not challenging the Air Force's technical risk determinations, but is merely arguing that the Air Force applied "different ground rules than what the RFP stated." Reply at 19. Not so. The RFP required assessment of each proposal's risks, and that is what the Air Force did.

SpaceX first complains that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Reply at 19. But this ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[2] Tab 132, 41585-86. SpaceX was free to propose ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But the Air Force was not required to blindly accept SpaceX's proposed solution without question; the Air Force reasonably concluded that SpaceX ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] SpaceX says it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Reply at 19, but the Air Force's concern ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tab 132, 41586.

- 8 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

Next, SpaceX criticizes the Air Force's evaluation of ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████. Reply at 20. Although such a finding was reasonable under the RFP's evaluation scheme with respect to cost, schedule and performance impacts, Tab 38, 1282; Tab 132, 41588, that was not the sole basis for the Air Force's conclusion. Rather, the Air Force was also concerned that SpaceX's ████████████████████████████ ████████████████ Tab 132, 41588, which SpaceX does not challenge in Reply.

Finally, SpaceX returns to its claim that it proposed a basing study ████ ████████████████████████████████████████████ Reply at 20. This misstates what SpaceX proposed: ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████ Tab 123 at 39987-88. ████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████.

**C. The Air Force Reasonably Evaluated SpaceX's Schedule Risk.**

SpaceX proposed its BFR, a vehicle that, while ████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████. See Def.'s Br. at 19-26. The Air Force's technical determination was reasonable, and SpaceX's Reply does not call that conclusion into question.

First, SpaceX criticizes the Air Force's judgment that ████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. See Def.'s Br. at 20. Although SpaceX ████████████████████████████ ████████████ the Air Force concluded that it ██████████████████

- 9 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

███████████████████████████████████████████████████

███████████████████████████████████████████. See id. at 21-22. In its Reply, SpaceX only responds to the third of these points, Reply at 21, and fails to address the primary grounds for the Air Force's technical judgment.[3]

Second, SpaceX claims that the Air Force ignored ████████████████ ██████████████████████████████████████" citing the Air Force's determination that its proposal ██████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████ Tab 132, 41484; Reply at 22. But this same paragraph concludes that Blue Origin has a ██████████████████████████ ███████████████████████████ see Tab 132, 41484. Moreover, the Air Force █████████████████████████████████████████████████ ███████████████████████████████████. Tab 132, 41511.

Third, SpaceX complains that the Air Force accepted Blue Origin's ██████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████. See Reply at 22. But the Air Force explained that Blue Origin's design had a more ███████████████████████████████████████████████ ███████████████████████████████████████. Tab 132, 41650-51; Tab 134, 41708; Def.'s Br. at 23.[4]

---

[3] SpaceX still maintains that the Air Force treated ULA differently ████████ ██████████████████████ Reply at 21 (quoting Tab 120, 3531). ████████████ ███████████████████████████████████████ Tab 120, 35254; Tab 132, 41459; Def.'s Br. at 22-23.

[4] SpaceX says that the Air Force ████████████████████████████████ ████████████████████████" Reply at 22. But the slide cited by SpaceX actually states that ████████████████████████████████████████████████████ ███████████████████████████████████████████. Tab 134, 41708. It does *not* say that the Air Force ████████████████, a conclusion belied by the record.

- 10 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record – ████████████████████

1       Finally, SpaceX continues to maintain that ▇▇▇▇
2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Reply at 22-23;
3 *see also* Def.'s Br. at 23-26. This argument is improperly based on an extra-record
4 declaration. *See* Def.'s Br. at 23-24; *see also San Luis*, 776 F.3d at 992. SpaceX is
5 not using its declaration to *explain* technical terms, rather it is putatively "▇▇
6 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
7 ▇▇▇▇▇▇▇▇▇." Reply at 22. That is beyond the scope of a declaration
8 in a record-review case. In any event, the ▇▇▇ Declaration is a one-sided,
9 unsupported argument about *differences* between ▇▇▇▇▇▇▇▇▇▇▇▇▇
10 ▇, *see* ECF No. 170-1 ¶¶ 36-42, which the Court cannot use to "determine the
11 correctness or wisdom of the agency's decision." *San Luis*, 776 F.3d at 993.

12       SpaceX's complaints also fail on the merits. The Air Force explained ▇▇
13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Tab 132, 41619, and acknowledged ▇▇
14 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
15 ▇, Def.'s Br. at 25-26. The Air Force ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Rather,
17 the Air Force ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
19 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Tab 132, 41620,
20 a conclusion to which SpaceX never objects. Reply at 22-23.

21     **III.    THE AIR FORCE'S COST ASSESSMENTS WERE REASONABLE.**
22     **A. The Air Force's Cost Evaluation Did Not Arbitrarily Favor ULA.**
23       As previously discussed, Def.'s Br. at 27-28, the LSA RFP excluded (1) "costs
24 incurred before" February 21, 2018, and (2) "[p]arallel research or investment (i.e.,
25 research or other investments that might be related to the proposed project but which
26 will not be a part of the SOW [statement of work]; typically those activities will be
27 undertaken regardless of whether the proposed project proceeds." Tab 38, 1276-77.
28

- 11 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

SpaceX continues to take issue with the Air Force's treatment of ████████, but those objections founder in the face of the RFP's plain language.

**1. ████████████████████████████████**

ULA did not demarcate certain heritage costs and costs for other U.S. government contracts in its proposal, because these costs either pre-dated the LSA cutoff date, or they were not part of the SOW (or both). *See* Def.'s Br. at 27-28. SpaceX objects that the RFP's exclusion of "parallel research or investment . . . does not cover *government payments* to ULA for launch operations and sustainment costs." Reply at 14. But this is not so – the RFP excludes *all* parallel investment that is not part of the SOW. In fact, the RFP stated that offerors "shall not include" such costs "as part of the projected Total Costs." Tab 38, 1276; *see also id.* at 1271, 1284 (describing the components of projected total costs and investment cost). SpaceX's "government payment" restriction cannot be found in the RFP.

Nor are the ULA contracts to which SpaceX objects part of the *LSA* SOW. Although the SOW includes "████████████████████████████████████████████████████████████████████████████████████████," *see* Reply at 15 (citing Tab 140a.1 at 42351-53, 42357-58, 42355, 42361), these SOW categories are for *different vehicles and services* – the ULA LSA is for Vulcan, while the pre-existing contracts are for Delta and Atlas. The headings are the same, but the substantive activities are different. There is no overlap between the LSA and the pre-existing contracts that required incorporation of additional costs in ULA's proposal.

**2. ████████████ Components**

SpaceX also argues that the Air Force should have accounted for the costs of certain launch components produced by ULA's subcontractor as government investment. *See* Reply at 15. It argues that because these components were related to technologies developed for Atlas, they should have been included as government investment in ULA's LSA proposal. *Id.* at 16. But to the extent components were

- 12 -
████████████ Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

developed for separate government programs under separate contracts, they are properly excluded as "parallel research and investment." Tab 38, 1277.

Similarly, with respect to the ████████, SpaceX ████████████████████████████████████████████████████████████████████████ ULA did not propose developing "Atlas program" components as part of the LSA SOW. *See* Reply at 16. ████████████████████████████████████████████.

### 3. BE-4 Development

Blue Origin is developing the BE-4 for New Glenn, and ULA is subcontracting the engine for its Vulcan. *See* Def.'s Br. at 29-30. Accordingly, ULA ████████████████████████████████████████████████████████████████

SpaceX ignores the crucial facts that ████████████████████,[5] *see* Tab 98, 30705; Tab 121, 36788, that ULA included the ████████████████████, Tab 120, 35373, and that ULA's proposal ████████████████████, Tab 120, 36063, 36261. SpaceX claims that this ████████████████████████████████" Reply at 16, but in fact, this method ████████████████████████████████. Nor did the Air Force "████████████████████████████████████████████████████ *id.*, as there is no indication in the record that Blue Origin ████████████████████████, and the Air Force made no such assumption.

---

[5] SpaceX assumes that because the total Blue Origin developmental cost is ████████████████████████████████████████ *See* Reply at 17. But the Air Force notified Blue Origin that ████████████████████████████████. Blue Origin then ████████████████████ Tab 132, 41515-18.

- 13 -
████ Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –
████████████████

1 **B. The Air Force's Treatment of SpaceX's Costs Was Reasonable.**

2     The Air Force also properly accounted for SpaceX's costs. It is undisputed that
3 the LSA RFP specifically required offerors to have vertical integration capabilities at
4 *both* the East and West Coasts. Tab 38, 1282. SpaceX complied with this requirement
5 ███████████████████████████████████████████████████████████████████
6 ███████████████████████████████████████████ Def.'s Br. at 32-33.
7     SpaceX nonetheless claims that the Air Force ████████████████
8 ███████████████████████████████████████████████████████████████████
9 ███████████████████████████████████████████████████████████████████
10 Reply at 18. But SpaceX is citing requirements *for an entirely different contract*, the
11 EELV Phase 2 RFP. *See* Def.'s Br. at 33. The LSA RFP – at issue in this case –
12 ███████████████████████████████████████████████████████████████████
13 ███████████████████████████████████████████████████████████████████
14 █████████████. Moreover, SpaceX ignores the fact that the EELV Phase 2
15 requirements were not established until May 3, 2019, well after the LSA decision was
16 made on October 9, 2018. Def.'s Br. at 33.
17     SpaceX similarly returns to its argument that the Air Force should have
18 assumed ████████████████████████████████████████████████████████
19 ███████████████████████████████████████████████████████████████████
20 ████████████████ *See* Reply at 18. As the contract makes clear, ██████
21 ██████████████████████████████████████. *See* Def.'s Br. at 34. SpaceX
22 ███████████████████████████████████████████████████████████████████
23 ███████████████████████████████████████████████████████████████████
24 █████████████████████████████████ Reply at 18 (quoting Tab 120, 35864),
25 which is consistent with ULA's decision to ████████████████████████████
26 █████████████████████████████████████████████ Tab 120, 35863.
27
28

- 14 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

IV. **SPACEX IS NOT ENTITLED TO INJUNCTIVE RELIEF.**

In its Reply, SpaceX appears to have appropriately retreated from its initial claim that it is entitled to specific injunctive relief, *i.e.*, award of an LSA. *See* Reply at 23-25. SpaceX concedes that vacatur would be the only permissible relief.

Nor does SpaceX dispute that "[t]he Ninth Circuit . . . does not mandate vacatur." *Klamath-Siskiyou Wildlands Ctr. v. NOAA. Nat'l Fisheries Serv.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015). SpaceX still faults the Air Force for "fail[ing] to even argue much less evidence that equity warrants [only a remand] in this case." Reply at 23. A vacatur determination is premature at this point, because it depends on two factors: "(1) the seriousness of an agency's errors and (2) the disruptive consequences that would result from vacatur." *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 881 (E.D. Cal. 2018). The first factor is not yet ripe; the parties cannot reasonably discuss the seriousness of the agency's error absent a prerequisite determination by this Court that there even *has* been error. Moreover, while the Air Force acknowledged the potential disruption that might occur, *see* Defs' Br. at 45, a full analysis depends on the scope of a potential vacatur order.

## CONCLUSION

For the aforementioned reasons, and those set out in Defendant's opening brief, this Court should deny SpaceX's Motion for Judgment on the Certified Administrative Record and enter judgment in favor of the United States.

Dated February 11, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/ Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
Trial Attorney, U. S. Dept. of Justice
Civil Division, Federal Programs Branch

*Counsel for the United States of America*

- 15 -

Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –

# PROOF OF SERVICE

I hereby certify that on this 11th day of February 2020, I caused a true and correct copy of the foregoing Sealed Opposition to Plaintiff's Motion for Judgment on the Certified Record to be served by email on:

John D. Lombardo, Craig A. Holman, and Kara L. Daniels, Counsel for SpaceX

Scott E. Pickens, Counsel for Blue Origin, LLC

Todd R. Steggerda, Counsel for United Launch Services, LLC

Kevin P. Mullen, Counsel for Orbital Sciences Corporation.

Dated February 11, 2020         Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

/s/ Joseph E. Borson
JOSEPH E. BORSON (Va. Bar No. 85519)
Trial Attorney, U. S. Dept. of Justice
Civil Division, Federal Programs Branch

*Counsel for the United States of America*

- 16 -
Surreply in Opposition to Plaintiff's Motion for Judgment on the Certified Record –