KEVIN M. LALLY (SBN 226402)
klally@mcguirewoods.com
McGUIREWOODS LLP
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, California 90071-3103
Telephone: 213.457.9862
Facsimile: 213.457.9882

TODD R. STEGGERDA (*Pro Hac Vice*)
tsteggerda@mcguirewoods.com
2001 K Street N.W.
Washington, D.C. 20006-1040
Telephone: 202.857.1700
Facsimile: 202.857.1737

Attorneys for Defendant-Intervenor United Launch Services, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Space Exploration Technologies Corp.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>United States of America,<br><br>　　　　Defendant,<br><br>　　v.<br><br>Blue Origin, LLC, *et al.*,<br><br>　　　　Defendant-Intervenors. | No. CV 19-7927-ODW (GJS)<br>Honorable Otis D. Wright II<br><br>█████ **OPPOSITION OF**<br>**███ANT-INTERVENOR,**<br>**UNITED LAUNCH SERVICES,**<br>**LLC, IN OPPOSITION TO**<br>**PLAINTIFF'S MOTION TO**<br>**SUPPLEMENT COURT RECORD**<br><br>Hearing Date: Oct. 5, 2020<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5D, 5th Floor<br>　　　　　　First Street Courthouse<br>　　　　　　350 W. First Street<br>　　　　　　Los Angeles, CA 90012 |

ULS' ██████ OPPOSITION TO SPACEX'S MOTION TO SUPPLEMENT COURT RECORD ██████

[Caption page continued]

EDWIN O. CHILDS (*Pro Hac Vice*)
echilds@mcguirewoods.com
ABRAM J. PAFFORD (*Pro Hac Vice*)
apafford@mcguirewoods.com
NATHAN R. PITTMAN (*Pro Hac Vice*)
npittman@mcguirewoods.com
KARLEE S. BLANK (*Pro Hac Vice*)
kblank@mcguirewoods.com
BLAKE R. CHRISTOPHER (*Pro Hac Vice*)
bchristopher@mcguirewoods.com
2001 K Street N.W.
Washington, D.C. 20006-1040
Telephone: 202.857.1700
Facsimile: 202.857.1737

Attorneys for Defendant-Intervenor United Launch Services, LLC

1    This case is an Administrative Procedure Act ("APA") challenge to the Air
2 Force's October 2018 award decision in its Launch Service Agreement ("LSA")
3 competition. SpaceX wants to supplement the record with the August 2020 Source
4 Selection Decision Document ("SSDD") for the Phase 2 competition. SpaceX claims
5 the SSDD shows it was harmed in the Phase 2 competition by the lack of an LSA,
6 and SpaceX suggests that the Phase 2 evaluation results support its entitlement to an
7 unspecified "remedy" in this APA action. (Mot. to Supp. Record, ECF 215 at 2-5.)

8    SpaceX's motion should be denied for three reasons. First, as a matter of law,
9 the LSA award decision and the Phase 2 awards are separate agency actions
10 governed by separate substantive and procedural requirements. The rationale for the
11 latter award decision has no bearing under the APA on the validity of the former,
12 and only the LSA decision is before the Court. Second, as a practical matter, nothing
13 the SSDD says about SpaceX's Phase 2 proposal can salvage SpaceX's unsuccessful
14 LSA proposal, because the LSA and Phase 2 evaluations addressed different rockets
15 – SpaceX's LSA proposal promised to offer the Starship launch vehicle for Category
16 C launches during Phase 2, but its actual Phase 2 proposal abandoned Starship in
17 favor of an entirely different Category C solution, Falcon Heavy. Third, this
18 mismatch between SpaceX's LSA and Phase 2 proposals is fatal to SpaceX's
19 assertion that the Phase 2 SSDD is relevant "for remedy purposes," (ECF 215 at 5),
20 because any remedy sought by SpaceX for alleged competitive harm in Phase 2
21 cannot lawfully be rectified by revisiting a proposed LSA solution SpaceX has
22 already abandoned. If SpaceX is not satisfied with the outcome of the Phase 2
23 competition, its remedy is to protest in a forum of competent jurisdiction, not to
24 muddy the waters in this APA challenge that should be drawing to a close.

25 **I.    The Phase 2 SSDD Is Irrelevant to the Merits of this APA Action**
26    It is a fundamental rule of APA review that the agency's decision is to be
27 evaluated only on the record in front of the agency at the time of its decision. *See*
28 *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). SpaceX acknowledges

1

this rule generally, (ECF 215 at 1), but later implies that its Phase 2 technical ratings somehow strengthen its case for an LSA, thus attempting to gloss over the APA rule it acknowledged. *Id.* at 4-5. The LSA and Phase 2 competitions involved evaluations of separate proposals conducted two years apart, and SpaceX should not be permitted to blur the line between the two by introducing irrelevant materials never considered by the agency in an attempt to evade the limited scope of APA review.

SpaceX's claim that the Phase 2 SSDD shows it suffered "harm" in the Phase 2 competition does not change the equation. SpaceX acknowledged in its position statement following the Phase 2 award that the "instant action does not challenge or seek to stop the Phase 2 Competition" and "no action of this Court will change" the Phase 2 award decision. (Joint Notice, ECF 214, 2.) Thus, any argument that ULA's LSA may have aided it in the Phase 2 procurement (ECF 215 at 3) is irrelevant in this APA action: it has no bearing on the validity of the original LSA award decision, and any APA relief SpaceX might obtain cannot, by definition, alter the basis for a Phase 2 award that has already been made on a different record. *See Allied Tech. Group, Inc. v. United States*, 92 Fed. Cl. 226, 229 (2010).[1] Any harm SpaceX allegedly suffered in the Phase 2 competition can only be remedied in a protest of that award.

The flaws in SpaceX's motion are compounded by another problem of its own making: abandoning Starship in its Phase 2 proposal. With respect to the Air Force's most critical and challenging Category C missions, the Phase 2 SSDD pertains to

---

[1] SpaceX's authorities are inapposite. It cites three *preliminary* injunction cases (two from the Ninth Circuit and one from the Northern District of California), a Court of Federal Claims bid protest decision under the Tucker Act (which gives the court wider authority to provide relief than the APA, *see* 28 U.S.C. § 1491(b)(2)), *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 483 (2013), and a case decided under the National Environmental Policy Act, which explicitly requires the consideration of new information. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560-61 (9th Cir. 2000).

1  *SpaceX's Falcon 9 and Falcon Heavy launch vehicles, whereas the Air Force's LSA*
2  *evaluation, and the subsequent APA litigation in this Court, focus heavily on*
3  *Starship.* This disconnect has only now been confirmed by SpaceX, (ECF 215 at 4
4  n.3), but it has existed (and was undisclosed) throughout this entire case. SpaceX
5  apparently abandoned Starship in Phase 2 after it lost the LSA competition, in large
6  part due to the Air Force's reasonable finding that Starship was risky, ████████
7  ████████████████████████████████████████. Having abandoned Starship in
8  Phase 2, SpaceX cannot now use a favorable Phase 2 evaluation of its other launch
9  vehicles retroactively to bolster its unsuccessful LSA proposal that offered Starship.

10  **II.    The Phase 2 SSDD Should Not Be Admitted for "Remedy Purposes"**

11  Perhaps recognizing that the Phase 2 SSDD is irrelevant to the merits, SpaceX
12  also suggests it should be added to the record "for remedy purposes." (ECF 215 at
13  5.) But as the government, ULA, and Orbital demonstrated in the Joint Notice of the
14  Phase 2 award, SpaceX's failure to propose Starship for the Phase 2 competition
15  means there is no APA remedy available on the basis of SpaceX's LSA proposal.
16  (ECF 214 at 3-4.) An LSA proposal that sought development funding for Starship
17  cannot lead to an LSA award to support a Phase 2 effort that replaced Starship with
18  an entirely different launch vehicle to meet the Air Force's Category C needs.

19  It is difficult to overstate the significance of SpaceX's belated admission that
20  it did *not* make Starship available to the government in Phase 2. The Air Force
21  designed the LSA process to ensure that multiple competitors would be able to offer
22  viable launch systems to perform National Security Space ("NSS") launches in the
23  Phase 2 competition. The Air Force was only willing to foot the bill for development
24  costs under an LSA if it received a reciprocal commitment that it would reap the
25  potential benefit of this investment in the form of a competitive Phase 2 proposal.
26  The LSA RFP states that "[t]he focus of this solicitation is to leverage industry's
27  commercial launch solutions and ensure they are modified to meet NSS
28  requirements." (RFP, Tab 38, 1260.) Thus, the LSAs were created to "facilitate

development of . . . EELV Launch System prototypes . . . allowing those launch systems to mature prior to a future selection of two NSS launch service providers for Phase 2 launch services procurements." (*Id.*) Per the RFP, LSA development funds would only be used to develop capabilities necessary for existing or planned commercially available space launch vehicles or infrastructure "that are primarily for national security space missions." (*Id.* at 1280.)

SpaceX knew all of this, because the Air Force required offerors to make an explicit Phase 2 commitment in the model contracts submitted as part of each LSA proposal. SpaceX's proposal included a model contract with the following promise:



(SpaceX Proposal, Tab 123, 39946.) ███████████████████████████
████████████████. (*See* Blue Origin LSA, Tab 138, 41799; Orbital LSA, Tab 139, 42050; ULA LSA, Tab 140, 42345.) SpaceX thus ████████████
████████████████████ (SpaceX Proposal, Tab 123, 39869), ████████
████████████████ Starship was integral to SpaceX's LSA proposal: ████
████████████████████████████████████████████████████████
████████████████████████ (FED, Tab 132, 41623), and SpaceX's proposal was not complete or awardable without it, (RFP, Tab 38, 1269.)

SpaceX has now confirmed it did not propose Starship for the Phase 2 Category C launches. Yet from the start of this litigation, SpaceX's filings contributed to the opposite impression, implying SpaceX had made Starship available to the government, and was thus eligible for an LSA, if only Starship were evaluated differently (either on remand or as the basis for a directed award). SpaceX filed its Supplemental Complaint and Motion for Judgment on the Certified Record

months after it submitted its initial Phase 2 proposal. SpaceX recognized that each LSA awardee had "committed to propose" in the Phase 2 "competition the launch systems covered by the challenged LSAs." (Supp. Compl., ECF 168, 1; Mot. for Judgment, ECF 170, 8.) SpaceX also recognized that the Air Force designed "the RFP to *fund the development of launch systems* by awarding LSAs under its OT authority . . . and required the awardees to propose those taxpayer-funded launch systems for the Phase 2 Competition." (ECF 168, ¶ 12) (emphasis in original). SpaceX's motion extolled Starship, calling it a "'groundbreaking technological' solution . . . for the two potential Category C missions," and it attacked the Air Force's assignment of multiple weaknesses arising from risks associated with Starship. (ECF 170 at 4, 11, 14, 19, 24-34.) SpaceX even attacked the conclusion that ███████████████████████████████████████████████████████████████, when it *knew it had not proposed Starship for those missions*. (*Id.* at 15.)

  SpaceX attempts to bridge the gap between its prior pleadings and recent admission by claiming it remains eligible for an LSA because it has not abandoned Starship development, and because there were non-Starship elements in its LSA proposal. (ECF 215 at 4 n.3.) SpaceX is wrong. It emphasizes that "LSAs with ongoing development will continue for those who receive launch service awards at that time." (*Id.* at 3.) But the reason for this continuity is plain – LSA awardees were required to propose LSA-funded launch vehicles to meet the Air Force's Phase 2 NSS needs, making it logical for LSA and Phase 2 performance to proceed on parallel paths. It makes no sense for SpaceX to cite this continuity as a basis for suggesting it should receive LSA funds for a commercial venture (Starship) with no connection to the Phase 2 procurement. The proposed inclusion of other development work does not change the fact that, under SpaceX's proposed LSA, Starship ████████████████████████████████████████, and, as SpaceX's Category C solution, was essential to SpaceX's LSA proposal. (RFP, Tab 38, 1269.)

  All of the foregoing returns full circle to SpaceX's attempt to supplement the

record with the Phase 2 SSDD "for remedy purposes." Evaluation results relating to SpaceX's Phase 2 proposal have no bearing on whether SpaceX's separate LSA proposal, involving a Starship launch vehicle not offered in Phase 2, should be re-evaluated if SpaceX were to succeed on its APA challenge. Another "remedy" SpaceX has suggested – a directed award (see ECF 170 at 31 & Joint Response to Court Questions, ECF 210 at 12) – is even more conclusively out of bounds, as it would be an egregious error to give SpaceX ▬▬▬▬▬ taxpayer dollars, without further agency review, to support development of a commercial Starship launch vehicle that *SpaceX and SpaceX alone* has known all along would not be used for Phase 2 Category C NSS launches.[2] The Phase 2 SSDD contains no information relevant to either the "remand" or "directed award" remedies for which SpaceX grasps, and which its own actions have placed beyond its reach.

## CONCLUSION

SpaceX's motion should be denied, because the SSDD is irrelevant to any issue properly before the Court, and because the ineligibility of SpaceX's LSA proposal for an LSA award forecloses any APA remedy based on that proposal.

Dated: September 9, 2020

MCGUIREWOODS LLP
TODD R. STEGGERDA

By: /s/ Kevin M. Lally
KEVIN M. LALLY

Counsel for Intervenor-Defendant
*United Launch Services, LLC*

---

[2] While the government's Phase 2 evaluation team would also have known what SpaceX proposed, they could not convey this to other government personnel. Federal employees face strict penalties under the Procurement Integrity Act, including criminal liability, if they disclose information contained in a proposal for a federal contract to other government personnel or to third parties before that contract is awarded. See 41 U.S.C. §§ 2101-07.

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | I hereby certify that on this 9th day of September, 2020, I caused a true and |
| 3 | correct copy of the foregoing Sealed Opposition of United Launch Services, LLC |
| 4 | to SpaceX's Motion to Supplement Court Record to be served by email on: |

Joseph E. Borson
U.S. Department of Justice
Federal Programs Branch - Civil Division
1100 L Street, N.W.
Washington, D.C. 20005
Tel: 202-514-1944
Fax: 202-616-8460
Email: joseph.borson@usdoj.gov
*Counsel for United States of America*

Scott E. Pickens
Barnes and Thornburg LLP
1717 Pennsylvania Avenue, N.W., Suite 500
Washington, D.C. 20006-1313
Tel: 202-371-6349
Fax: 202-289-1330
Email: Scott.Pickens@btlaw.com
*Counsel for Blue Origin, LLC*

Kevin P. Mullen
Morrison and Foerster LLP
2000 Pennsylvania Avenue, N.W., Suite 6000
Washington, D.C. 20006
Tel: 202-887-1500
Fax: 202-887-0763
Email: KMullen@mofo.com
*Counsel for Orbital Sciences Corporation*

ULS' ▇▇▇ OPPOSITION TO SPACEX'S MOTION TO SUPPLEMENT COURT RECORD

Craig A. Holman
Arnold and Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
202-942-5722
Fax: 202-942-5999
Email: craig.holman@arnoldporter.com
*Counsel for Space Exploration Technologies Corp.*

Dated: September 9, 2020      By:    */s/ Kevin M. Lally*
                                          KEVIN M. LALLY

                                          Counsel for Intervenor-Defendant
                                          *United Launch Services, LLC*